UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARKLAND HAMILTON,

                                        *Plaintiff*,

        v.

SIEMENS HEALTHCARE DIAGNOSTICS,
INC., *d/b/a* SIEMENS HEALTHINEERS AG,
SABINE VON SENGBUSCH, *and* RENEE
HOWELL,

                                        *Defendants*.

---

No. 23-CV-7408 (KMK)

ORDER & OPINION

Appearances:

Kristina Susanna Heuser, Esq.
Liberty Counsel
Orlando, FL
*Counsel for Plaintiff*

Alfons D'Auria, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
New York, NY
*Counsel for Defendants*

Kelly Marie Cardin, Esq.
Littler Mendelson, P.C.
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Markland Hamilton ("Plaintiff") brings this Action against Siemens Healthcare

Diagnostics, Inc., doing business as Siemens Healthineers AG ("Siemens"), Sabine von

Sengbusch ("von Sengbusch"), and Renee Howell ("Howell") (collectively, "Defendants"),

alleging that Defendants unlawfully maintained a hostile work environment and discriminated

and retaliated against Plaintiff on the basis of his race, national origin, religion, sex, and sexual

orientation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§ 1981 ("Section 1981"), the New York State Human Rights Law (the "NYSHRL"), and the

Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, et seq.  (*See generally* Am.

Compl. (Dkt. No. 23).)  Before the Court is Defendants' Motion to Dismiss (the "Motion")

Plaintiff's Amended Complaint.  (*See* Not. of Mot. (Dkt. No. 34).)  For the following reasons,

Defendants' Motion is granted in part and denied in part.

I.  Background

A.  Factual Background

The following facts are drawn from the Amended Complaint and are assumed to be true

for the purpose of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y.*

*Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff is a "[B]lack, Christian, heterosexual male . . . born and raised in Jamaica."

(Am. Compl. ¶ 4.)  Plaintiff has been employed by Siemens Healthineers for 15 years and, since

approximately 2020, has worked as a Junior Clinical Research Specialist.  (*Id.* ¶¶ 8–9.)  Siemens

is a German company with a subsidiary located in Westchester, New York.  (*Id.* ¶ 5.)  von

Sengbusch, a white woman, was, until her recent retirement at an unspecified date, the Vice

President in charge of the division in which Plaintiff works and was head of the company's

Diversity, Equity, and Inclusion ("DEI") initiative.  (*Id.* ¶ 6.)  "Upon information and belief,"

von Sengbusch is "a German citizen . . . and a lesbian."  (*Id.*)  Howell, a white woman, was

Plaintiff's immediate supervisor until von Sengbusch's retirement, at which point Howell was

promoted to Vice President.  (*Id.* ¶ 7.)

In or around 2016, Plaintiff applied to a higher-salary position in Siemens' New Jersey

office.  (*Id.* ¶ 10.)  Though Plaintiff was advised by a supervisor in New Jersey that he was well-

2

qualified, "Plaintiff was denied the transfer and promotion." (*Id.*) In 2018, after being assigned increased duties, Plaintiff requested a salary increase, which triggered a Human Resources ("HR") assessment. (*Id.* ¶ 11.) As a result, Plaintiff was granted a salary increase that was not retroactive and which Plaintiff felt was insufficient. (*Id.* ¶ 12.) "Upon information and belief," Plaintiff's promotion/transfer to New Jersey was blocked, and his salary increase was incommensurate, due to the efforts of von Sengbusch. (*Id.* ¶ 13.)

Beginning at an unspecified time in 2020, Siemens employees were directed to work from home due to the COVID-19 pandemic. (*Id.* ¶ 14.) In December 2020, Howell insisted on delivering "some things" to Plaintiff at his home and refused Plaintiff's proposed alternatives in an attempt to confirm whether Plaintiff had moved out of New York. (*Id.* ¶ 15–16, 18.) In January and February 2021, Howell "threatened to write Plaintiff up for misconduct, report him to [HR], and give him a negative performance review." (*Id.* ¶ 19.) In June 2021, Howell, without justification, "accused Plaintiff of not doing his job." (*Id.* ¶ 21.) Howell then "directed Plaintiff to write down all of the procedures associated with his job," but failed to follow up with Plaintiff once he completed the assignment. (*Id.* ¶ 22–23.) In August 2021, when Plaintiff calmly requested a salary increase, Howell "accused Plaintiff of being belligerent." (*Id.* ¶ 24.) While Plaintiff and Howell agreed to address the salary increase with HR, this meeting never took place. (*Id.* ¶ 25)

Around September 2021, in response to Siemens' COVID-19 vaccination requirement, Plaintiff requested and was granted a temporary three-month religious accommodation. (*Id.* ¶¶ 26–28.) In December 2021, Howell "spoke so aggressively and disrespectfully to Plaintiff in a []virtual[] meeting" that coworkers reached out to him afterward and Plaintiff felt humiliated. (*Id.* ¶ 30.) When, at the direction of an HR employee, Plaintiff reached out to von Sengbusch

and requested a meeting to report Howell's conduct, von Sengbusch "rebuffed" Plaintiff and "responded that it was highly irregular and improper for Plaintiff to communicate with her directly." (*Id.* ¶¶ 31–32.)

In early 2022, Plaintiff made a request to use accrued leave to stay home for the birth of his eighth child. (*Id.* ¶¶ 34–35.) The request was denied because Howell "insiste[d] that Plaintiff return to the office immediately." (*Id.* ¶ 35.) Plaintiff then requested and was granted FMLA leave, during which Plaintiff was not paid. (*Id.* ¶ 38.) At an unspecified time, Siemens dropped its vaccination requirement and, upon the expiration of his FMLA leave, Plaintiff was required by Howell to return to the office full-time. (*Id.* ¶¶ 40–41.) Plaintiff had, at some point prior, moved to Pennsylvania and was the only employee "singled out for mandatory in-person work[]." (*Id.* ¶ 42.) Plaintiff "had no choice but to comply with [Howell's] directives" and was directed on his first day back to clean out a supply closet for the next two months. (*Id.* ¶¶ 45–46.) Prior to his return to the office, Plaintiff's responsibilities were administrative, including "handling all of the financial work for his [clinical trial group]," and "did not require an in-person presence." (*Id.* ¶ 44.) Upon Plaintiff's return to in-person work, Howell sent an email to "the entire group advising them of the [cleaning] assignment" and directing Plaintiff's colleagues to communicate not with Plaintiff, but with an unnamed individual who was his assistant at the time. (*Id.* ¶¶ 46–47.) After completing the cleaning task "within a week or two," Plaintiff was required to work in the office alone every day. (*Id.* ¶ 49.) At some point afterward, Siemens "took away Plaintiff's financial duties and assigned them entirely to his assistant, promoting her to the position of Financial Analyst and giving her a salary that, upon information and belief, exceeds [that of] Plaintiff[]." (*Id.* ¶ 50.)

4

Around this time, Plaintiff filed a grievance with HR and a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"). (*Id.* ¶ 48; *see also* Decl. of Kelly M. Cardin ("Cardin Decl."), Ex. A ("EEOC Charge") (Dkt. No. 36-1).)[1] In his EEOC Charge, Plaintiff stated that he had experienced discrimination based on "Religion, Retaliation, [and] Sex." (EEOC Charge 2.) Plaintiff began the "Particulars" section by stating that he is "a Caribbean American male . . . ." (*Id.*) Plaintiff further claimed that in June 2021, "Respondent . . . asked [him] to write procedures for [his] job duties," and Plaintiff, "in turn, asked [Respondent] to clearly define [his] job description and to also have a meeting with HR discussing the same." (*Id.*) In retaliation, his supervisor "threatened to discipline [Plaintiff] by drafting a Performance Improvement Plan (PIP)," but no PIP was drafted or sent to HR. (*Id.*) In March 2022, Plaintiff sent his employer "a protective letter . . . challenging [Defendants'] command for [him] to take an experimental drug against [his] religious belief and medical advice, as well as raising past disparate treatment regard [a] religious exemption for the COVID-19 Vaccine policy and a history of underpaid wages." (*Id.* 3.) Plaintiff received no response to this letter. (*Id.*) Plaintiff states that upon his return to the office in April 2022, he was told that "[his] assistant would continue to work from home and perform [his] job duties" and that he was, without explanation, required to come into the office full-time to perform menial tasks. (*Id.*) Plaintiff was "excluded from meetings that [he] would normally participate in" and his

---

[1] The Court may properly take judicial notice of the EEOC charge because it is a public document that is part of a relevant administrative proceeding. *See Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 438 (S.D.N.Y. 2023) (quoting *Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010)); *see also Kouakou v. Fideliscare N.Y.*, 920 F. Supp. 2d 391, 394 n.1 (S.D.N.Y. 2012) ("Because the EEOC [c]harge is part of an administrative proceeding, the [c]ourt may take judicial notice of it without converting [the] [d]efendant's motion into a motion for summary judgment.").

colleagues "were told . . . that they should not come to [Plaintiff] for assistance as they normally had done." (*Id.*) Plaintiff characterized this as a reassignment. (*Id.*) Finally, Plaintiff claims that "certain senior management . . . treated [him] in a harassing and demeaning manner on many occasions" and that he has "been unfairly denied fair compensation for work performed, advancement[,] and promotion opportunities." (*Id.*)

B. Procedural Background

Plaintiff initiated this Action on August 21, 2023. (*See* Compl. (Dkt. No. 1).) On January 29, 2024, Plaintiff filed an Amended Complaint. (*See* Am. Compl.) On March 5, 2024, the Court set a briefing schedule on Defendants' Motion. (*See* Dkt. No. 31.) On April 12, 2024, Defendants filed the instant Motion. (*See* Not. of Mot.; Defs' Mem. in Supp. of Mot. ("Defs' Mem.") (Dkt. No. 35); Cardin Decl. (Dkt. No. 36).) On May 10, 2024, Plaintiff filed his Opposition. (*See* Pl's Mem. in Opp. to Mot. ("Pl's Opp.") (Dkt. No. 38); Decl. of Kristina S. Heuser ("Heuser Decl.") (Dkt. No. 39).) On May 24, 2024, Defendants replied. (*See* Defs' Reply in Supp. of Mot. ("Defs' Reply") (Dkt. No. 40).)

## II. Discussion

Plaintiff's Title VII claims are, as against Siemens: disparate treatment on the basis of religion (First Cause of Action), on the basis of race and national origin (Second Cause of Action), and on the basis of sex and sexual orientation (Third Cause of Action); hostile work environment (Fourth Cause of Action); and retaliation (Fifth Cause of Action). Plaintiff's NYSHRL claims are, as against Siemens, discrimination (Eighth Cause of Action), hostile work environment (Ninth Cause of Action), and retaliation (Tenth Cause of Action); and as against von Sengbusch and Howell, aiding and abetting (Eleventh Cause of Action). Plaintiff's FMLA

claim is, as against Siemens, retaliation (Sixth Cause of Action).  Plaintiff's Section 1981 claim

is, as against all Defendants, for discrimination and retaliation (Seventh Cause of Action).

A.  Standard of Review

      The Supreme Court has held that while a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration adopted) (internal quotation marks and citation omitted).  Indeed, Rule 8 of the

Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration

adopted) (internal quotation marks and citation omitted).  Rather, a complaint's "[f]actual

allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550

U.S. at 555.

      "[O]nce a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege

"only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if

a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[]

complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration

adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

## B.  EEOC Exhaustion

"Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII statutory scheme and, as such, a precondition to bringing such claims in federal court." *Kirkland-Hudson*, 665 F. Supp. 3d at 437 (alterations adopted) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001)). Administrative exhaustion serves "to avoid unnecessary judicial action by the federal courts by '[giving] the administrative agency the opportunity to investigate, mediate, and take remedial action.'" *Sackett v. Dirlam*, No. 22-CV-6245, 2023 WL 4206520, at *4 (W.D.N.Y. June 26, 2023) (alteration in original) (quoting *Stewart v. U.S. I.N.S.*, 762 F.2d 193, 198 (2d Cir. 1985)). "Thus, before filing a complaint in

federal court, plaintiffs asserting Title VII . . . claims must first exhaust their administrative remedies by filing a complaint with the EEOC or the equivalent state agency." *Ashmeade v. Amazon.com*, No. 23-CV-4331, 2024 WL 4266391, at *10 (S.D.N.Y. Sept. 23, 2024) (alterations adopted) (quotation marks omitted) (quoting *Kaba v. Hope Home Care*, No. 23-CV-9512, 2024 WL 1679327, at *2 (E.D.N.Y. Apr. 18, 2024)). "The exhaustion requirement applies not only to causes of action but also to underlying factual allegations." *Kirkland-Hudson*, 665 F. Supp. 3d at 439 (quoting *Fanelli v. New York*, 51 F. Supp. 3d 219, 227 (E.D.N.Y. 2014)). The 300-day requirement "is analogous to a statute of limitations." *Eliav v. Roosevelt Island Operating Corp.*, No. 22-CV-9978, 2024 WL 196477, at *3 (S.D.N.Y. Jan. 18, 2024) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996)).

According to Defendants, the EEOC Charge "was limited to claims of discrimination based on his religion and sex" and "did not expressly allege disparate treatment because of [Plaintiff's] race, national origin, . . . sexual orientation[, and retaliation]." (*See* Defs' Mem. 5–6.) As for race and national origin, Plaintiff argues that the language "I am Caribbean American male . . ." in his EEOC Charge and his assertions in a "Rebuttal to the Employer's Position Statement," (Heuser Decl., Ex. 2 (Dkt. No. 39-2)), suffice to assert race and national origin discrimination before the EEOC, (Pl's Opp. 4–5). Plaintiff further contends that, because Plaintiff identified "sex" as a basis for discrimination in his EEOC charge, and because "an allegation of discrimination on the basis of sex necessarily includes the category of sexual orientation as the latter is a sub-category of the former," that discrimination on the basis of sexual orientation was asserted before the EEOC. (*Id.* 4.) Finally, Plaintiff argues that the Amended Complaint explains how race, religion, and national origin "are closely intertwined for him as a [B]lack, Jamaican Catholic." (*Id.* 5.)

1. Reasonably Related

The Second Circuit has recognized that "claims . . . not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999). Conduct is reasonably related to conduct in an EEOC charge if: "[1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (alterations in original) (citation and quotation marks omitted); *Kirkland-Hudson*, 665 F. Supp. 3d at 438 (same). The first category "is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims he is suffering." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (citation and quotation marks omitted) (alteration adopted). The Second Circuit has advised that the focus of the inquiry "should be on the factual allegations made in the EEOC charge itself" and whether they "gave that agency adequate notice to investigate" the claims subsequently asserted in federal court. *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (internal quotation marks omitted) (alteration adopted). "Defendants bear the burden of proving a failure to exhaust." *Kane v. St. Raymond's Roman Cath.Church*, No. 14-CV-7028, 2015 WL 4270757, at *5 (S.D.N.Y. July 13, 2015).

The Court agrees with Defendants that Plaintiff's EEOC Charge does not allege facts reasonably related to a claim of discrimination on the basis of race, national origin, or sexual orientation. Religion, retaliation, and sex are the only two categories listed as a basis for

discrimination.  (*See* EEOC Charge 2.)  Plaintiff mentions drafting a "protective letter" that references his religious beliefs and notes that he was "reassigned" in favor of his female assistant.  (*See id.* 3.)  Under the most favorable reading of the EEOC Charge, Plaintiff's claims allege he was discriminated against on the basis of his request for a religious exemption and that he, a man, was reassigned in favor of his assistant, a woman.  (*See generally id.*)  The mere fact that Plaintiff mentioned he was a Caribbean American is insufficient to give the EEOC adequate notice to investigate a claim of race and/or national origin discrimination.  *Cf. Wali v. One Source Co.*, 678 F. Supp. 2d 180, 183–84 (S.D.N.Y. 2009) (dismissing claims, finding that "the mere fact that [plaintiff's] name may appear to be a Muslim name, and that it was listed on his administrative complaint, was insufficient to give the EEOC adequate notice to investigate a claim of religious discrimination," and that "[t]he factual allegations listed in that [race discrimination] complaint made no reference to his religion"); *see also Parker v. Isr. Disc. Bank of N.Y., Inc.*, No. 21-CV-7196, 2022 WL 16833626, at *3 (S.D.N.Y. Nov. 9, 2022) (finding that plaintiff had failed to exhaust a claim of sex discrimination where the EEOC charge contained only "passing references to gender"); *Jiggetts v. Diaz*, No. 02-CV-8959, 2009 WL 749575, at *6–7 (S.D.N.Y. 2009) (finding plaintiff's claims of retaliation and religious discrimination were not reasonably related to her subsequent claims of race, national origin or disability); *McLean-Nur v. Dep't of Transp.*, No. 98-CV-819, 2000 WL 297176, at *4–5 (S.D.N.Y. Mar. 21, 2000) (finding plaintiff's claims of religious and gender discrimination were not reasonably related to his EEOC charges of race, age and disability discrimination).

As for sexual orientation, Plaintiff argues that, because sexual orientation is a subset of sex, "an allegation of discrimination on the basis of sex necessarily includes the category of sexual orientation."  (Pl's Opp. 4.)  The premise is correct, but the question is whether Plaintiff's

sex discrimination and sexual orientation discrimination claims are reasonably related.  The

Second Circuit has held that "sexual orientation discrimination is motivated, at least in part, by

sex and is thus a subset of sex discrimination."  *Zarda v. Altitude Express, Inc.*, 883 F.3d 100,

112 (2d Cir. 2018), *aff'd sub nom. Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020).  The

Second Circuit reasoned that:

> Because one cannot fully define a person's sexual orientation without identifying
> his or her sex, sexual orientation is a function of sex.  Indeed sexual orientation is
> doubly delineated by sex because it is a function of both a person's sex and the
> sex of those to whom he or she is attracted.  Logically, because sexual orientation
> is a function of sex and sex is a protected characteristic under Title VII, it follows
> that sexual orientation is also protected.

*Id.* at 113.  That reasoning and the Second Circuit's holding, however, do not compel the

determination that Plaintiff seeks—while a claim of sex orientation discrimination necessarily

implicates sex discrimination, it is not clear to the Court that the converse is true.  Plaintiff's

argument is essentially this:  Plaintiff's sex is a protected characteristic under Title VII, sexual

orientation is a subset of sex, therefore allegations of discrimination on the basis of sex can

implicitly include discrimination on the basis of sexual orientation.  In other words, an employee

saying he was discriminated against for being a male is independently sufficient to put the EEOC

on notice that the employee may also have been discriminated against for being heterosexual (or,

for that matter, homosexual).  Plaintiff's argument fails because flipping the *Zarda* and *Bostock*

reasoning on its head breaks the logical connection—one can, in fact, "fully define [their] sex[]

without identifying his or her sex[ual orientation]."[2]  *Id.*  Further, the Court has not found any

caselaw that supports or even discusses Plaintiff's argument.  "[B]ecause an employer may

---

[2] Plaintiff's argument "exemplifies a logical fallacy known as 'affirming the
consequent.'"  *Carnegie Inst. of Wash. v. Fenix Diamonds, LLC*, 544 F. Supp. 3d 440, 453
(S.D.N.Y. 2021).

discriminate on the basis of sex in numerous ways," *Brooks v. Westrock Servs., LLC*, No. 20-CV-298, 2021 WL 4987159, at *2 (N.D. Fla. Feb. 15, 2021), and because Plaintiff's EEOC Charge does not mention sexual orientation *at all*, the Court finds that Plaintiff's sexual orientation claim is not reasonably related to his sex discrimination claim, *see Quirino v. The New Jewish Home*, No. 19-CV-5778, 2021 WL 11430534, at *9 (S.D.N.Y. Dec. 29, 2021) ("Courts have held that a claim alleging discrimination upon a protected classification that is different than the protected classification set forth in the EEOC charge is not reasonably related." (alteration and emphasis omitted) (quoting *Toney v. Probation Dep't*, No. 15-CV-561, 2016 WL 859381, at *4 (E.D.N.Y. Jan. 28, 2016)); *cf. Glanville v. Mayor and City Council of Baltimore, Md.*, No. 23-EA-3395, 2024 WL 5264381, at *8 (D. Md. Dec. 31, 2024) ("[D]iscrimination based on race and discrimination based on color are not synonymous."); *Toulouse v. Vill. Diagnostic Treatment Ctr.*, No. 15-CV-9387, 2018 WL 4682782, at *4 (S.D.N.Y. Sept. 28, 2018) (finding that plaintiff's sex and sexual orientation discrimination claims were not reasonably related to claims of disability discrimination and retaliation included in his EEOC charge because he "did not allege any facts that would have given the EEOC notice to investigate any claims based on [his] sex or sexual orientation.").

As for retaliation, Plaintiff specifically checked the box for "retaliation" and noted in the particulars that he was "reassigned" after returning from leave. (*See* EEOC Charge 2–3.) This is exactly what Plaintiff alleges in the Amended Complaint, (Am. Compl. ¶ 83), and so there is no question that Plaintiff exhausted his retaliation claim.

The Court does not consider Plaintiff's "Rebuttal to the Employers' Position Statement" in the above analysis. Plaintiff argues that the rebuttal demonstrates how race was a basis for the alleged discrimination and disparate treatment. (*See* Pl's Opp. 4.) However, "the Second Circuit

has instructed courts to 'focus' on 'the factual allegations made in the EEOC charge itself . . . .'"

*Parker*, 2022 WL 16833626, at *3 n.4 (quoting *Deravin*, 335 F.3d at 201).  As such, courts

regularly refuse to consider affidavits or unsworn rebuttals that aim to "enlarge the scope of the

charge to encompass new unlawful employment practices or bases for discrimination."  *Holtz v.*

*Rockefeller & Co.*, 258 F.3d 62, 83 (2d Cir. 2001), *abrogated on other grounds by Gross v. FBL*

*Fin. Servs., Inc.*, 557 U.S. 167 (2009); *see also Parker*, 2022 WL 16833626, at *3 n.4

(disregarding plaintiff's EEOC rebuttal statement); *Vaughn v. Empire City Casino at Yonkers*

*Raceway*, No. 14-CV-10297, 2017 WL 3017503, at *13 (S.D.N.Y. July 14, 2017) (rejecting

plaintiff's argument that a claim was exhausted because it was expanded upon in his rebuttal

statement to the EEOC in light of the Second Circuit's having repeatedly "rejected similar

attempts to amend an EEOC charge by way of subsequent filings").[3]

---

[3] Defendants do not specifically argue that Plaintiff has failed to exhaust his hostile work environment claim.  In any event, this Court determines that Plaintiff exhausted his hostile work environment claim. A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotations and citations omitted).  "To give the EEOC adequate notice of a hostile work environment claim, the EEOC charge must reference 'repeated conduct or the cumulative effect of individual acts directed toward the plaintiff.'"  *Morris*, 680 F. Supp. 2d at 437 (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008) (holding hostile work environment claim not reasonably related to discrimination claim filed with the EEOC because plaintiff's "EEOC complaint recount[ed] nothing more than a single act of physical and verbal abuse" and therefore contained "no reference to repeated conduct or the cumulative effect of individual acts")).  Because Plaintiff's EEOC charge alleges repeated conduct regarding treatment in a "harassing and demeaning manner" lasting at least one year, Plaintiff has exhausted his hostile work environment claim.  *See Kirkland-Hudson*, 665 F. Supp. 3d at 439 n.1 (finding that plaintiff had exhausted her hostile work environment claim where her EEOC charge alleged repeated conduct through a pattern of discrimination).

2.  Timeliness

a.  Title VII

The statute of limitation for filing a charge of discrimination with the EEOC is 300 days. *See Ashmeade*, 2024 WL 4266391, at *10.  Plaintiff filed his EEOC Charge on August 4, 2022, (*see* EEOC Charge 2), and so 300 days prior to his filing is October 8, 2021.  Claims arising outside of the 300-day period are barred.  *See Roches-Bowman v. City of Mount Vernon*, No. 21-CV-5572, 2022 WL 3648394, at *3 (S.D.N.Y. Aug. 24, 2022).  "To determine whether a claim was timely filed with the EEOC, the incidents of employment discrimination . . . must be categorized as either discrete acts or continuing violations." *Castiblanco v. Am. Airlines, Inc.*, No. 17-CV-5639, 2019 WL 4751880, at *7 (E.D.N.Y. Sept. 29, 2019) (citation and quotation marks omitted).  "Under the continuing violation exception, if a plaintiff files a timely EEOC charge 'as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone.'" *McKinney v. County of Dutchess*, No. 19-CV-3920, 2024 WL 1376499, at *5 (S.D.N.Y. Mar. 31, 2024) (quoting *Edner v. NYCTA-MTA*, 134 F. Supp. 3d 657, 663 (E.D.N.Y. 2015)).  "[I]n the Second Circuit, the continuing violations doctrine is disfavored outside of a hostile work environment situation, and should only be applied in compelling circumstances." *Kirkland-Hudson*, 665 F. Supp. 3d at 444.  Discrete discriminatory acts include discontinuing a particular job assignment, *see Stein v. Town of Greenburgh*, No. 21-CV-5673, 2023 WL 2432574, at *5 (S.D.N.Y. Mar. 8, 2023), "failure to promote, denial of transfer, or refusal to hire," *Kirkland-Hudson*, 665 F. Supp. 3d at 445; *see also Anderson v. New York City Dep't of Fin.*, No. 19-CV-7971, 2020 WL 1922624, at *4 (S.D.N.Y. Apr. 21, 2020) ("It is well-established that transfers, demotions, failure to compensate adequately, and failure to

promote do not constitute a continuing violation." (quoting *Little v. NBC*, 210 F. Supp. 2d 330,

368 (S.D.N.Y. 2002))).

Plaintiff's allegations that he was denied promotions and pay raises, was assigned menial

tasks, and was effectively demoted on the basis of religious discrimination and of sex

discrimination are quintessential discrete discriminatory acts. *See Wong v. New York*, No. 21-

CV-1338, 2024 WL 3936762, at *6 (N.D.N.Y. Aug. 26, 2024) (noting that "[o]ther examples of

discrete events which do not amount to continuing violations are 'failures to obtain promotions

and pay raises, demotions and reductions in pay, and failures to obtain certain assignments.'"

(quoting *Sundaram v. Brookhaven Nat'l Lab'ys*, 424 F Supp. 2d 545, 561 (E.D.N.Y. 2006)).

Accordingly, the events alleged to have occurred prior to October 8, 2021, "are not actionable

independently and are time-barred with respect to Plaintiff's discrimination and retaliation

claims for relief." *Reyes v. Westchester Cnty. Health Care Corp.*, No. 19-CV-8916, 2021 WL

310945, at *9 (S.D.N.Y. Jan. 29, 2021), *aff'd*, No. 21-CV-410, 2021 WL 4944285 (2d Cir. Oct.

25, 2021), *cert. denied*, 142 S. Ct. 1671 (2022).

### b. NYHRL

NYSHRL claims have a three-year statute of limitations. *Franchitti v. Cognizant Tech.*

*Sols. Corp.*, No. 21-CV-2174, 2022 WL 2657171, at *8 (S.D.N.Y. July 8, 2022). While the

Second Circuit has held that "filing an EEOC charge does not toll the limitations period for state-

law tort claims, even if those claims arise out of the same factual circumstances as the

discrimination alleged in the EEOC charge," *Castagna v. Luceno*, 744 F.3d 254, 255 (2d Cir.

2014), courts in this District hold that *Castagna* does not extend to NYSHRL claims, *see, e.g.*,

*Kirkland-Hudson*, 665 F. Supp. 3d at 446–47 (collecting cases). Accordingly, the Court holds

that the filing of the EEOC Charge on August 4, 2022, tolled Plaintiff's NYSHRL claims such that any allegations occurring after August 4, 2019, are timely.

### c.  Section 1981

"Generally, employment discrimination and retaliation claims brought under [Section] 1981 are subject to a four-year statute of limitations."  *Kirkland-Hudson*, 665 F. Supp. 3d at 447 (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004)).  Accordingly, all of Plaintiff's claims of discrete acts of retaliation and discrimination brought pursuant to Section 1981 that occurred prior to August 21, 2019, are time-barred.  (*See generally* Compl. (indicating that Plaintiff initiated this Action on August 21, 2023).)  However, "to the extent these allegations provide 'context and support for the timely claims that Plaintiff asserts,' the Court will consider them."  *Id.* at 448 (citing *Allen v. New York City Dep't of Env't Prot.*, 51 F. Supp. 3d 504, 510 n.2 (S.D.N.Y. 2014)).

### C.  Analysis

Title VII prohibits discrimination against an employee based on that employee's "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  The NYSHRL adds a number of other categories, including sexual orientation, gender identity, and others.  *See* N.Y. Exec. Law § 296(1).  Finally, 42 U.S.C. § 1981 provides that

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  Section 1981 prohibits discrimination on the basis of race, but "does not prohibit discrimination on the basis of gender[,] . . . religion, national origin, or age."  *Anderson*

*v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998); *see also Huang v. Amazon.Com, Inc.*, No. 22-CV-3527, 2023 WL 11879549, at *8 (S.D.N.Y. Jan. 31, 2023) (same).

Claims of discrimination under Title VII, NYSHRL, and Section 1981 (pursuant to Section 1983) are analyzed under the familiar three-part framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Kirkland-Hudson*, 665 F. Supp. 3d at 449. At the first step, a plaintiff must establish a prima facie case of discrimination by showing: "(1) []he was within [a] protected class; (2) []he was qualified for the position; (3) []he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Streichert v. Town of Chester, N.Y.*, No. 19-CV-7133, 2022 WL 4449305, at *6 (S.D.N.Y. Sept. 23, 2022) (internal quotation marks and citation omitted). If the plaintiff sufficiently makes a prima facie case, "the burden then shifts to the employers to articulate a legitimate, non-discriminatory reason for the adverse action. If the employer satisfied its burden, the plaintiff must then show that the reasons presented were a pretext for discrimination." *Halkitis v. N.Y. City Dep't of Educ.*, No. 19-CV-11753, 2022 WL 392911, at *5 (S.D.N.Y. Feb. 9, 2022) (alteration adopted) (quoting *DeMuth v. U.S. Small Bus. Admin*, 819 F. App'x 23, 25 (2d Cir. 2020) (summary order)).

At the motion to dismiss stage, a plaintiff need only "provid[e] a short and plain statement of the claim that shows that []he is entitled to relief that gives the defendant fair notice of the discrimination claim and the grounds upon which it rests." *Freckleton v. Mercy Coll. NY*, No. 22-CV-1985, 2023 WL 2648827, at *5 (S.D.N.Y. Mar. 27, 2023) (alterations adopted) (citations omitted). Crucially, while "a plaintiff is not required to plead a prima facie case under *McDonnell Douglas* . . . to defeat a motion to dismiss," *id.* (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)), "the elements [of a prima facie case] provide an

outline of what is necessary to render [a plaintiff's] claim for relief plausible," *Kirkland-Hudson*, 665 F. Supp. 3d at 450 (internal quotation marks omitted) (quoting *Somersett v. City of New York*, No. 09-CV-5916, 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011)).

### 1. Title VII and NYSHRL Discrimination (First, Second, Third, and Eighth Cause of Action)

Defendants do not contest that Plaintiff is a member of a protected class or that he was qualified for his position. (Defs' Mem. 8.) However, Defendants argue that Plaintiff cannot establish a prima facie case of discrimination because he did not suffer an adverse employment action, (*see id.* 8–9), and that, even assuming there was an adverse employment action, Plaintiff has not plausibly alleged that Defendants' actions give rise to an inference of discrimination, (*see id.* 9–12). Plaintiff counters that he has suffered adverse employment actions and has sufficiently alleged discriminatory intent. (*See* Pl's Opp. 8–10.)

#### a. Adverse Employment Action

"An adverse employment action is 'a materially adverse change in the terms and conditions of employment.'" *Mathirampuzha*, 548 F.3d at 78 (emphasis omitted) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). The Second Circuit has instructed that:

> To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.

*Id.* (quoting *Sanders*, 361 F.3d at 755). "[A]dverse employment actions must be 'more than trivial, insubstantial, or petty.'" *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 113 (S.D.N.Y. 2022) (quoting *Colon v. Fashion Inst. of Tech. (State Univ. of N.Y.)*, 983 F. Supp. 2d

277, 288 (S.D.N.Y. 2013)).  Plaintiff argues that he plausibly alleges a slew of conduct that constitutes adverse employment action.  The Court addresses each in turn.

First, Plaintiff points to "deni[al of] transfer, promotion, . . . pay increase[,] and . . . equal pay."  (Pl's Opp. 8–9 (citing Am. Compl. ¶¶ 10, 12, 20, 24–25).)  The conduct alleged in the Complaint in support of this adverse action is untimely under Title VII because it occurred entirely before October 8, 2021.[4]

Second, Plaintiff points to public humiliation and private denigration "to the detriment of his advancement."  (Pl's Opp. 9 (citing Am. Compl. ¶¶ 19, 21, 24, 29–31).)  The only instance that is timely for Title VII purposes is a December 2021 virtual meeting in which Howell "spoke . . . aggressively and disrespectfully to Plaintiff" in "a humiliating incident for Plaintiff."  (Am. Compl. ¶¶ 30–31.)  That Plaintiff was "embarrassed [and] demeaned . . . do[es] not constitute [an] adverse employment action[]," *Zoulas v. New York City Dep't of Educ.*, 400 F. Supp. 3d 25, 55 (S.D.N.Y. 2019), because Plaintiff "has not alleged that the . . . [conduct] . . . resulted in any materially adverse change in the terms and condition of [his] employment," *Kirkland-Hudson*, 665 F. Supp. 3d at 453; *see also Honey v. County of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002) (finding that "reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results").

Third, Plaintiff points to assignment of "duties outside the scope of his job title."  (Pl's Opp. 9 (citing Am. Compl. ¶¶ 22, 41–47, 49).)  Apart from Howell's direction to "write down all of the procedures associated with [Plaintiff's] job," which took place in or around June 2021,

---

[4] Plaintiff's allegations regarding this conduct between 2016 and 2018 are also untimely under the NYSHRL.  (Am. Compl. ¶¶ 10, 12.)  Plaintiff's allegations regarding this conduct from May 2021 to September 2021 are timely under the NYSHRL.  (*Id.* ¶¶ 20, 24–25.)

(Am. Compl. ¶ 22), these allegations are timely.  Further, they clearly describe an adverse

employment action.  *See Vega*, 801 F.3d at 85 (describing "significantly diminished material

responsibilities" as a materially adverse change in the terms and conditions of employment); *see

also Tieu v. N.Y.C. Econ. Dev. Corp.*, 717 F. Supp. 3d 305, 321 (S.D.N.Y. 2024), (finding that

"the reassignment of the majority of [plaintiff's] projects . . . constitutes an adverse employment

action."), *appeal pending*, No. 24-519 (2d Cir. Mar. 15, 2024).

Fourth, Plaintiff points to the denial of leave to which he was entitled.  (Pl's Opp. 9

(citing Am. Compl. ¶¶ 35–36).)  The conduct is timely under Title VII, as it occurred in early

2022.  (*See* Am. Compl. ¶ 35.)  However, denial of leave does not constitute an adverse

employment action because it is not a materially adverse change in the terms, conditions, or

privileges of employment.  *See Richards v. N.Y.C. Health & Hosps. Corp.*, No. 21-CV-6027,

2023 WL 7611560, at *8 (E.D.N.Y. Nov. 14, 2023) (finding that denial of leave did not

constitute an adverse employment decision), *appeal pending*, No. 23-8033 (2d Cir. Dec. 18,

2023); *Wallace v. Crab House, Inc.*, No. 21-CV-5757, 2023 WL 2477819, at *10 (S.D.N.Y. Mar.

13, 2023) (same and collecting cases).

Fifth, Plaintiff points to being forced to return to the office.  (Pl's Opp. 9 (citing Am.

Compl. ¶¶ 34–35).)  The conduct is timely under Title VII, as it occurred in early 2022.  (*See*

Am. Compl. ¶ 35.)  Defendants cite a case from 2013 for the proposition that forcing Plaintiff to

return to the office was not an adverse employment action, (*see* Defs' Mem. 8 (citing *Seale v.

Madison County*, 929 F. Supp. 2d 51 (N.D.N.Y. 2013))), and Plaintiff cites no caselaw in

response, (*see generally* Pl's Opp).  Courts are divided on whether the denial of a request to

work remotely or requiring an employee to return to the office constitutes an adverse

employment action under Title VII.  While, "[b]efore and since the COVID-19 pandemic, courts

in the Second Circuit have generally found that the denial of an employee's request to work

remotely does not constitute an adverse employment action under Title VII," *Jones v.*

*Brookhaven Sci. Assocs., LLC*, No. 23-CV-4194, 2024 WL 4145777, at *7 (E.D.N.Y. Sept. 10,

2024), some courts have held or suggested otherwise, *see Gayles v. Roswell Park Cancer Inst.*

*Corp.*, No. 22-CV-750, 2023 WL 6304020, at *4–5 (W.D.N.Y. Sept. 28, 2023) (holding that,

"[i]n the unique context of the COVID-19 pandemic," defendant's requiring plaintiff to return to

the office in June 2020  constituted a material change in the conditions of employment); *Ham v.*

*ICL Bronx House Inst. for Cmty. Living*, No. 21-CV-3910, 2021 WL 2651945, at *3 (S.D.N.Y.

June 28, 2021) (stating that "an[] adverse employment action . . . could include [a plaintiff] being

denied permission to work from home," but granting motion to dismiss on other grounds).  The

Court, however, agrees with the reasoning in *Jones* that "the *Gayles* court reached a decision

contrary to the weight of the authority in the Second Circuit, including cases decided during the

pandemic."  *Jones*, 2024 WL 4145777, at *9.  Further, even if the *Gayles* court's analysis was

persuasive, its holding is easily distinguished as it concerned a return-to-work requirement in

June 2020, during the height of the Covid-19 pandemic, *see Gayles*, 2023 WL 6304020, at *3,

whereas Plaintiff was required to return to work around April 2022, after the peak of the

pandemic, (*see* EEOC Charge 3; Am. Compl. ¶ 41).  Whatever COVID-19 considerations may

have led the *Gayles* court to conclude that a return-to-work requirement was an adverse

employment action had dissipated by April 2022, as evidenced by Siemens' "dropp[ing] its

vaccine mandate" by that time.  (Am. Compl. ¶ 40.)  Further, Plaintiff does not allege that he

faced "legitimate public and personal health and safety concerns," *Gayles*, 2023 WL 6304020, at

*4–5, by returning to work, (*see generally* Am. Compl.).  The Court finds, therefore, that

Plaintiff has failed to allege that being forced to return to the office was an adverse employment action.

Finally, Plaintiff points to his demotion in relation to his former assistant. (*See* Pl's Opp. 9 (citing Am. Compl. ¶¶ 47, 50).) "A demotion may also qualify as an adverse employment action, particularly when it is 'a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.'" *Thompson v. Shutterstock, Inc.*, No. 23-CV-4155, 2024 WL 2943813, at *7 (S.D.N.Y. June 10, 2024) (alteration adopted) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d. Cir. 2003)). Here, Plaintiff has plausibly alleged he was demoted when he was directed to perform menial work, (*see* Am. Compl. ¶ 45), and his previous duties were reassigned to his former assistant, (*see id.* ¶¶ 47, 50).

In sum, Plaintiff has adequately alleged two adverse employment actions: the assignment of duties outside the scope of his job title and his demotion in relation to his former assistant. The Court now addresses whether they occurred under circumstances giving rise to an inference of discrimination.

### b. Inference of Discrimination

"Under Title VII and the NYSHRL, a plaintiff need not prove (or plead) that 'the causal link between injury and wrong is so close that the injury would not have occurred but for the act.'" *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 325–26 (S.D.N.Y. 2020) (quoting *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019)). Rather, at this stage, "a plaintiff need only give plausible support to a minimal inference of a discriminatory motivation." *Vega*, 801 F.3d at 84 (citation and quotation marks omitted). "Yet 'a discrimination complaint must still at a minimum assert nonconclusory factual matter sufficient to nudge its claims across

the line from conceivable to plausible to proceed.'" *Johnson v. Rockland Cnty. BOCES*, No. 21-CV-3375, 2022 WL 4538452, at *10 (S.D.N.Y. Sept. 28, 2022) (alterations adopted) (quoting *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)).

A showing of an "inference of discriminatory motivation may be supported directly, such as by statements that an adverse employment action was related to [the] plaintiff's protected class, . . . or indirectly by an allegation that [the] plaintiff was treated different from and less favorably than similarly situated peers." *Roache v. Long Island R.R.*, 487 F. Supp. 3d. 154, 172 (E.D.N.Y. 2020) (first citing *Haskell v. Kaman Corp.*, 743 F.2d 113, 119 (2d Cir. 1984), then *Marquez v. Starrett City Assocs.*, 406 F. Supp. 3d 197, 208–09 (E.D.N.Y. 2017)). Further, "[a]n inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms.'" *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). Alternatively, "[the] plaintiff also may create a 'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 611–12 (E.D.N.Y. 2017) (quoting *Vega*, 801 F.3d at 87).

"Clearing this low pleading threshold 'entitles the plaintiff to the temporary presumption of *McDonnell Douglas* until the defendant furnishes its asserted reasons for its action against the plaintiff,' the evaluation of which is more appropriately considered at summary judgment or at trial." *Roache*, 487 F. Supp. 3d. at 172 (quoting *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016), then citing *Levy v. Legal Aid Soc'y*, 408 F. Supp. 3d 209, 216 (E.D.N.Y. 2019)).

Plaintiff has shown an inference of discrimination in relation to his demotion by alleging that Plaintiff, a man, was treated less favorably than his former assistant, a woman. (*See* Am.

Compl. ¶¶ 47, 50.)  While this may be thin, it suffices to clear the low pleading threshold.  *See Littlejohn*, 795 F.3d at 313 (noting that where a plaintiff "alleges that she was replaced by a white . . . employee" who "was less qualified for the position," plaintiff raised an inference of discrimination sufficient to survive dismissal); *Moy v. Napoli Shkolnik, PLLC*, No. 23-CV-3788, 2024 WL 3498131, at *8 (S.D.N.Y. July 22, 2024) (finding that plaintiff's demotion gave rise to an inference of discrimination where she alleged that a less-experienced co-worker was given plaintiff's responsibilities to the point plaintiff was demoted).

Plaintiff has not, however, plausibly alleged an inference of discrimination in relation to the assignment of duties outside the scope of his job.  As discussed above, Plaintiff's claims for discrimination on the basis of race, national origin, and sexual orientation have been dismissed. Therefore, Plaintiff cannot point to allegations of circumstances concerning race, national origin, or sexual orientation to show an inference of discrimination in relation to the assignment of duties outside of the scope of his job—rather, he must allege an inference related to his religion or sex.  He has not done so.  Simply put, Plaintiff has not alleged, even in a conclusory manner, that the assignment of menial tasks had any connection whatsoever to Plaintiff's religion or sex. Plaintiff makes general and conclusory allegations that there was "a culture of celebration of homosexuality and transgenderism" in which he did not participate because of his religious beliefs.  (Am. Compl. ¶ 58.)  This does not suffice to connect the reassignment of duties to his religion.  *See Wallace v. Esper*, No. 18-CV-6525, 2019 WL 4805813, at *7 (S.D.N.Y. Sept. 30, 2019) (dismissing a claim where plaintiff failed to "articulate sufficient facts . . . to suggest that [any adverse] action occurred as a result of a [protected category]-based animus); *Idlisan v. N.Y.C. Health & Hosps. Corp.*, No. 12-CV-9163, 2013 WL 6049076, at *5 (S.D.N.Y. Nov. 15, 2013) (finding complaint did not plead "a plausible nexus" between the plaintiff's disability and

defendant's failure to hire him where it lacked allegations that defendant's employees "made comments or took actions" that could give rise to an inference of discrimination). Finally, the Court finds that Plaintiff has not alleged a mosaic of intentional discrimination that gives rise to an inference of discrimination. While Plaintiff does allege "bits and pieces of evidence," the Court finds that Plaintiff's subjective belief that he was treated differently on the basis of his religion or sex is not enough to support an inference of discrimination.[5] *See Majied v. N.Y.C. Dep't of Educ.*, No. 16-CV-5731, 2018 WL 333519, at *3 (S.D.N.Y. Jan. 8, 2018) (finding that "[plaintiff's] subjective belief that she was treated differently on account of a disability is plainly not enough to state a claim" and that dismissal was appropriate because "plaintiff [had] not pled any connection between a disability and an adverse employment action").

Accordingly, Defendants' Motion is granted as to Plaintiff's First and Second Causes of Action. Defendants' Motion is denied as to Plaintiff's Third and Eighth Causes of Action in relation to discrimination on the basis of sex.

### 2. Title VII, NYSHRL, and Section 1981 Retaliation (Fifth and Tenth Cause of Action)

Title VII's anti-retaliation provision prohibits an employer from "discriminat[ing] against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). In other words, "Title VII forbids an employer to retaliate against an employee for . . . complaining of employment discrimination prohibited by Title VII." *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006). Courts analyze claims for retaliation pursuant to Title VII under

---

[5] The series of incidents that the Court may consider includes the December 2021 incident in which Plaintiff was berated by Howell, (*see* Am. Compl. ¶ 30), von Sengbusch's rebuffing Plaintiff's request for a meeting, (*see id.* ¶ 32), and Howell's assigning him menial tasks, (*see id.* ¶¶ 45–46).

the familiar framework set forth by the Supreme Court in *McDonnell Douglas*. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ("Federal and state law retaliation claims are reviewed under the burden-shifting approach of *McDonnell Douglas*."). "Under the first step of the *McDonnell Douglas* framework, the plaintiff must establish a prima facie case of retaliation." *Id.* at 844 (citation omitted). Once the plaintiff has done so, "the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *Id.* at 845 (citation omitted). "The employee at all times bears the burden of persuasion to show retaliatory motive." *Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 145 (2d Cir. 2014) (citation omitted). "As with other claims analyzed under the *McDonnell Douglas* framework, the allegations need only give plausible support to the reduced prima facie requirements." *Thomson v. Odyssey House*, No. 14-CV-3857, 2015 WL 5561209, at *20 (E.D.N.Y. Sept. 21, 2015) (alterations, quotation marks, and citation omitted), *aff'd*, 652 F. App'x 44 (2d Cir. 2016).

To establish a prima facie case of retaliation, the plaintiff must show that: "(1) []he was engaged in an activity protected under Title VII; (2) [his] employer was aware of [his] participation in the protected activity; (3) the employer took adverse action against [him]; and (4) a causal connection existed between the protected activity and the adverse action." *Zann Kwan*, 737 F.3d at 850 (citing *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)). Accordingly, "for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action— against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (citation omitted). "A plaintiff's burden at this prima facie stage is de minimis." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (italics omitted).

Defendants argue that the claim fails because any protected activity (filing a complaint with HR and the EEOC Charge) occurred after alleged adverse employment actions. (*See* Defs' Reply 7.)

In April 2022, Plaintiff filed both a complaint with HR and his EEOC Charge. (*See* Am. Compl. ¶ 48.) The filing of the EEOC Charge is clearly a protected activity. *See Medina v. AAM 15 Mgmt. LLC*, --- F. Supp. 3d ----, 2024 WL 4307816, at *7 (S.D.N.Y. Sept. 26, 2024). Plaintiff alleges that his HR complaint "regard[ed] the discrimination." (Am. Compl. ¶ 80.) There are no other clarifying allegations with respect to the HR complaint. (*See generally id.*) A HR complaint can constitute a protected activity if the complaint "complains or is critical about the discriminatory employment practices of [the] employer." *Littlejohn*, 795 F.3d at 318 (alterations adopted) (quotation marks omitted). Here, however, Plaintiff simply does not allege facts to determine whether Plaintiff's HR complaint meets this low standard. While Plaintiff does allege that the complaint "regard[ed] discrimination," (Am. Compl. ¶ 80), without more information, the Court cannot determine whether the discrimination complained of was related to Plaintiff's religion or sex. In the absence of any details, Plaintiff's "generalized complaint[]s" is "insufficient to allege that a plaintiff engaged in a protected activity." *Mejia v. White Plains Self Storage Corp.*, No. 18-CV-12189, 2020 WL 247995, at *6 (S.D.N.Y. Jan. 16, 2020) (quotation marks and internal citation omitted); *cf. Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (noting that Title VII "protects . . . protests of *discriminatory* employment practices" (emphasis added)). Put differently, Plaintiff's allegations "lack[] the specificity required to qualify [the HR complaint] as protected," and so the Court cannot determine whether the complaint "ma[de] it clear that [Plaintiff] [was] complaining about prohibited conduct." *Goldzweig v. Consol. Edison Co. of N.Y., Inc.*, No. 20-CV-4297, 2024 WL 5056350, at *8

(S.D.N.Y. Dec. 10, 2024), *appeal pending*, No. 25-89 (2d Cir. Jan. 14, 2025).  Therefore, for the purpose of Plaintiff's retaliation claim, the Court will consider only his EEOC Charge.

As discussed above, *see* supra Section II.C.1.a, the assignment of duties outside the scope of Plaintiff's job and his demotion in relation to his former assistant constitute adverse employment actions.  Plaintiff's Amended Complaint alleges that he filed his EEOC Charge "around [the] time" that he was assigned menial tasks and effectively demoted.  (*See* Am. Compl. ¶¶ 45–48.)  An adverse employment action cannot serve as the basis for a retaliation claim if the action occurred before a plaintiff engaged in a protected activity.  *See Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 103 (S.D.N.Y. 2023).  Here, the Amended Complaint is not clear on the timeline of the alleged adverse employment actions and the EEOC Charge.  As a result, the Court cannot determine if Plaintiff has alleged that Defendants took the adverse employment action in retaliation for his filing his EEOC Charge.  *Cf. Forrest v. N.Y.C. Hous. Auth.*, No. 22-CV-6480, 2023 WL 3203646, at *8–9 (S.D.N.Y. May 2, 2023) (finding that plaintiff failed to raise a plausible inference of a "causal nexus" between the alleged adverse employment action and protected activity where the adverse action preceded the protected activity (citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001))); *Lessambo v. PricewaterhouseCoopers, L.P.*, No. 08-CV-6272, 2010 WL 3958787, at *12 (S.D.N.Y. Sept. 27, 2010) (finding that plaintiff failed to make out a prima facie retaliation case where "there [was] no evidence that [plaintiff] complained of racist remarks," and so "any retaliation could not have been based on a protected activity"), *aff'd*, 451 F. App'x 57 (2d Cir. 2011).  Accordingly, Defendants' Motion is granted as to Plaintiff's Fifth and Tenth Causes of Action.

3.  FMLA Retaliation (Sixth Cause of Action)

FMLA retaliation claims are also analyzed under the *McDonnell Douglas* framework. *See Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 574 (S.D.N.Y. 2023).  "To establish a prima facie case of FMLA retaliation, a plaintiff must establish that 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent."  *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 (2d Cir. 2016) (alteration adopted).  Where a plaintiff alleges multiple adverse acts, "the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable."  *Smith v. N. Shore-Long Island Jewish Health Sys.*, 286 F. Supp. 3d 501, 512 (E.D.N.Y. 2018) (quoting *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010)); *Crosby*, 695 F. Supp. 3d at 574 (same).  "[T]he standard for an adverse employment action in retaliation claims is considerably broader than the standard for discrimination claims."  *Vaughn v. City of New York*, No. 06-CV-6547, 2010 WL 2076926, at *14 (E.D.N.Y. May 24, 2010).  But-for causation is not required under the FMLA. *See Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 169 (2d Cir. 2017).  An inference of retaliatory intent in the FMLA context can be shown when "a causal connection exists between the plaintiff's protected activity and the adverse action taken by the employer," which can manifest from "very close" temporal proximity between the protected activity and adverse action.  *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 152 (2d Cir. 2012) (quotation marks and citation omitted).

Defendants argue that Plaintiff has not pled that he suffered an adverse employment action and that he has failed to allege the requisite inference of unlawful motivation.  (*See* Defs'

Mem. 16–17.)  Plaintiff argues in response that the adverse employment actions show that Defendants "want[ed] to punish Plaintiff and make an example out of him to the rest of the staff to send the message that they must fall in line and not make complaints of discrimination, or else." (Pl's Opp. 13.)  Plaintiff cites nothing in support of this contention.

"[I]n order to make out a retaliation claim it is not enough to simply submit a request for FMLA leave; the plaintiff must demonstrate []he actually had a right to such leave." *Arizmendi v. Rich Prod. Corp.*, No. 21-CV-371, 2022 WL 4119127, at *9 (D. Conn. Aug. 10, 2022) (quoting *Milne v. Navigant Consulting*, No. 08-CV-8964, 2010 WL 4456853, at *10 n.19 (S.D.N.Y. Oct. 27, 2010)).  "Courts have held that when a plaintiff is granted leave under the FMLA, that plaintiff has exercised rights protected under the FMLA." *Kirkland-Hudson*, 665 F. Supp. 3d at 470 (citations omitted).  As Plaintiff was granted FMLA leave, (Am. Compl. ¶ 38), he has plausibly alleged that he exercised rights protected under the FMLA, *see Kirkland-Hudson*, 665 F. Supp. 3d at 470.

The FMLA's protection against retaliation "encompasses the employer's conduct both during and after the employee's FMLA leave." *Ottley-Cousin v. MMC Holdings, Inc.*, No. 16-CV-577, 2019 WL 1994488, at *17 (E.D.N.Y. May 6, 2019) (quotation marks and citation omitted).  Plaintiff alleges that he was retaliated against for taking FMLA leave as evidenced by the menial tasks he was assigned upon returning from leave in April 2022 and his ensuing demotion.  (*See* Am. Compl. ¶¶ 45–47, 50; EEOC Charge 2.)  As discussed above, *see supra* Section II.C.1.a, Plaintiff has alleged two adverse employment actions:  the assignment of duties outside the scope of Plaintiff's job and his demotion in relation to his former assistant.  "Courts frequently find a period of a few weeks sufficient to allow a jury to infer a causal connection between the protected act and the adverse employment action." *Fernandez v. Woodhull Med. &*

*Mental Health Ctr.*, No. 14-CV-4191, 2017 WL 3432037, at *8 (E.D.N.Y. Aug. 8, 2017); *see also Blake v. Recovery Network of Programs, Inc.*, 655 F. Supp. 3d 39, 47 (D. Conn. 2023) (denying a motion to dismiss a FMLA retaliation claim where the court found that a period of less than four weeks between the protected activity and adverse action gave rise to an inference of retaliatory intent). Here, the assignment of menial tasks occurred immediately upon Plaintiff's return from FMLA leave, (*see* Am. Compl. ¶¶ 45–46), and Plaintiff's alleged demotion occurred two weeks later, (*see id.* ¶¶ 49–50). This temporal proximity suffices to give rise to an inference of retaliatory intent. Accordingly, because Plaintiff has stated a prima facie case of retaliation and Defendants have not offered a legitimate, non-retaliatory reason for the employment action, (*see generally* Defs' Mem.; Defs' Reply), Defendants' Motion is denied as to Plaintiff's Sixth Cause of Action.

    4.  Title VII and NYSHRL Hostile Work Environment (Fourth and Ninth Cause of Action)

    Defendants argue that Plaintiff has failed to show that the conduct complained of was sufficiently continuous or severe to give rise to a hostile work environment claim. (*See* Defs' Mem. 12–15.)

    "A hostile work environment claim requires a showing [1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano*, 294 F.3d at 373 (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)); *see also Perkins v. U.S. Dep't of the Treasury*, No. 18-CV-8911, 2022 WL 19772, at *15 (S.D.N.Y. Jan. 3, 2022) (same). This standard applies to Plaintiff's Title VII, NYSHRL, and Section 1981 claims brought pursuant to Section 1983. *See Lopez v. White Plains Hosp.*, No. 19-CV-6263, 2022 WL 1004188, at *15 (S.D.N.Y. Mar. 30, 2022). "At the motion to

32

dismiss stage, . . . a plaintiff need only plead facts sufficient to support the conclusion that []he was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for the worse." *Cowan v. City of Mount Vernon*, No. 14-CV-8871, 2017 WL 1169667, at *4 (S.D.N.Y. Mar. 28, 2017) (alterations, quotation marks, and citation omitted); *Kirkland-Hudson*, , 665 F. Supp. 3d at 465 (same).  The Second Circuit has held that "[p]roving the existence of a hostile work environment involves showing both objective and subjective elements:  the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (quotation marks and citation omitted).  In determining whether a plaintiff has plausibly alleged an actionable hostile environment, courts must look at the "totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Littlejohn*, 795 F.3d at 321 (quoting *Harris*, 510 U.S. at 23).  "[I]ncidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano*, 294 F.3d at 374 (quoting *Perry*, 115 F.3d at 149).  "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Id.* (citation omitted).  "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe.  They are not intended to promote or enforce civility, gentility or even decency." *Isbell v. City of New York*, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018) (quotation marks and citation omitted).  Thus, for example, "excessive criticism and rudeness do not constitute a hostile work environment." *Ramirez v. Temin & Co.*, No. 20-CV-6258, 2021 WL 4392303, at *8 (S.D.N.Y. Sept. 24, 2021).

Plaintiff alleges that he experienced "a pattern of activity aimed at bringing about [his] resignation." (Am. Compl. ¶ 17; *see also* Pl's Opp. 10 (citing Am. Compl. ¶¶ 17–25, 29–31, 35–37, 41–51, 55, 65, 74–77).) The alleged conduct is not "sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment." *Alfano*, 294 F.3d at 373 (quotation marks omitted). In December 2021, Howell "spoke so aggressively and disrespectfully to Plaintiff . . . that multiple of Plaintiff's co-workers reached out to him after the meeting to ask him what was going on . . . and if he was okay." (Am. Compl. ¶ 30.) Plaintiff characterizes this as "a humiliating incident." (*Id.*) This is akin to a "stray" remark that is insufficient to establish a hostile work environment. *See Lopez v. White Plains Hosp.*, No. 19-CV-6263, 2022 WL 1004188, at *10 (S.D.N.Y. Mar. 30, 2022) (collecting cases) ("It is well established that 'the stray remarks even of a decision-maker, without more, cannot prove a claim of employment discrimination.'" (alteration adopted) (quoting *Hasemann v. United Parcel Serv. of Am., Inc.*, No. 11-CV-554, 2013 WL 696424, at *6 (D. Conn. Feb. 26, 2013)), *aff'd*, No. 22-817, 2022 WL 19835765 (2d Cir. May 16, 2022). Even if Plaintiff was humiliated, such an incident cannot be considered sufficiently pervasive, "given that single incidents can amount to a hostile work environment only where they are 'extraordinarily severe.'" *Royall v. City of Beacon*, No. 24-CV-3, 2024 WL 4266546, at *20 (S.D.N.Y. Sept. 23, 2024) (quoting *Alfano*, 294 F.3d at 374). In January 2022, Plaintiff's request for leave was denied and Howell insisted he return to the office immediately, thereby requiring him to get the COVID-19 vaccine or be terminated. (*See* Am. Compl. ¶¶ 35–37.) Plaintiff alleges that "[t]his placed a great deal of stress upon Plaintiff and his family." (*Id.* ¶ 37.) Plaintiff also points to being required to return to the office, (*id.* ¶¶ 41–45), being assigned menial tasks, (*id.* ¶¶ 45–46), and his demotion, (*id.* ¶¶ 47–51). Either individually or together, these alleged events are not plausibly objectively severe or pervasive

enough to constitute a hostile work environment. *See, e.g.*, *Olin v. Rochester City Sch. Dist.*, 596 F. Supp. 3d 475, 488 (W.D.N.Y. 2022) ("mean" boss who subjected plaintiff to unfair scrutiny and criticism did not plausibly create hostile work environment absent "sexist or disparaging remarks, threats, physical interactions or other egregious conduct"); *Garcia v. NYC Health & Hosps. Corp.*, No. 19-CV-997, 2019 WL 6878729, at *7 (S.D.N.Y. Dec. 17, 2019) (collecting cases).

Further, Plaintiff has failed to plausibly establish causation—that is, that any of the conduct he claims created a hostile work environment was the result of his religion or sex. (*See generally* Am Compl.) In other words, to the extent that Plaintiff raises allegations to establish a connection between the alleged hostile environment and his protected characteristics, those allegations are wholly conclusory. Courts consistently dismiss similar cases where plaintiffs make only conclusory allegations with regard to causation. *See Royall*, 2024 WL 4266546, at *20 (collecting cases); *Paupaw-Myrie*, 653 F. Supp. 3d at 106 (dismissing a hostile work environment claim where plaintiff had not plausibly alleged that alleged discriminatory conduct arose from animus based on plaintiff's protected category); *Varughese v. Mount Sinai Med. Ctr.*, No. 12-CV-8812, 2015 WL 1499618, at *42 (S.D.N.Y. Mar. 27, 2015) (finding it was "fallacy" for plaintiff to say: "I belong to a protected class; something bad happened to me at work; therefore, it must have occurred because I belong to a protected class.")

Accordingly, Defendants' Motion is granted as to Plaintiff's Fourth and Ninth Cause of Action.

### 5. Section 1981 (Seventh Cause of Action)

Defendants argue that Plaintiff has failed to allege that his race was the "but for" reason for any alleged adverse employment action. (*See* Defs' Mem. 17–18.)

"To state a Section 1981 claim, 'a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.).'" *Alameda v. Ass'n of Soc. Work Boards*, No. 23-CV-6156, 2024 WL 4302389, at *5 (S.D.N.Y. Sept. 25, 2024) (quoting *Ahmad v. S.R.*, No. 18-CV-3416, 2018 WL 11472415, at *3 (S.D.N.Y. July 16, 2018) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993))).  "[S]ection 1981 extends to discrimination in employment." *Shamciyan v. Acacia Network, Inc.*, No. 22-CV-2122, 2023 WL 6214546, at *5 (S.D.N.Y. Sept. 24, 2023) (citing *Patterson v. County of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004)).

"A claim for employment discrimination under [S]ection 1981 requires a plaintiff to 'allege facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.'" *Shamciyan*, 2023 WL 6214546, at *5 (quoting *Vega*, 801 F.3d at 87).  The Supreme Court long ago made clear that Section 1981 "can be violated only by purposeful discrimination." *Gen. Bldg. Contractors Ass'n v. Pennyslvania*, 458 U.S. 375, 391 (1982).  Moreover, the Supreme Court has emphasized a Section 1981 plaintiff has the burden of showing, at every stage of the proceedings, that the plaintiff's race was a "but for" cause of any alleged injury.  *Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, 589 U.S. 327, 333 (2020); *see also id.* at 341 ("To prevail, a [Section 1981] plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right.").  It is not sufficient for a plaintiff merely to allege that race was a "motivating factor."  *Id.* at 338 ("[N]owhere in its amendments to [Section] 1981 did Congress so much as whisper about motivating factors."); *id.* at 341 (holding that in its pleading

36

a Section 1981 plaintiff must allege but-for causation).  To plead a Section 1981 retaliation

claim, a plaintiff a plaintiff must plausibly plead: '(1) he participated in a protected activity

known to defendant; (2) the defendant took an employment action disadvantaging him; and (3)

there exists a causal connection between the protected activity and the adverse action.'"

*Shamciyan*, 2023 WL 6214546, at *5 (quoting *Dodd v. My Sisters' Place, Inc.*, No. 21-CV-

10987, 2023 WL 251954, at *5 (S.D.N.Y. Jan. 18, 2023)).

Plaintiff fails to plead a Section 1981 claim of discrimination and of retaliation.  Simply

put, the Amended Complaint fails to plausibly allege an intent to discriminate against Plaintiff on

the basis of his race.  (*See generally* Am. Compl.)  Plaintiff attempts to back into an allegation

of but-for discrimination by alleging that "Defendants discriminated against Plaintiff solely

because he is a Christian, Plaintiff is Christian because he is Jamaican, and he is [B]lack because

he is Jamaican, so Defendants are discriminating against Plaintiff on account of his race and

national origin, even if indirectly."  (Pl's Opp. 15.)  This is a specious argument.  Even if

Plaintiff could chain together allegations to support but-for causation under Section 1981, these

allegations are implausible.  Plaintiff is asking the Court to credit that Plaintiff's Christianity

leads inexorably to his race, and that alleged conduct discriminating against him on the basis of

religion necessarily discriminates against him on the basis of his race.  Putting aside that Plaintiff

has not plausibly alleged discrimination on the basis of religion, this is a far cry from instances in

which courts have found plausible allegations of an intent to discriminate on the basis of race.

*See, e.g.*, *Azzarmi v. Neubauer*, No. 20-CV-9155, 2024 WL 4275589, at *14 (S.D.N.Y. Sept. 24,

2024) (finding an intent to discriminate where plaintiff's race was repeatedly mentioned and he

experienced openly discriminatory oral statements); *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470,

476 (S.D.N.Y. 2013) (concluding that the plaintiffs had plausibly alleged discriminatory intent

where they had alleged that a defendant "frequently ordered [a plaintiff] to leave the front sales area of the store and go to the back of the store because she wanted only white employees greeting customers at the front of the store" (alteration adopted) (citation omitted)); *Benzinger*, 385 F. Supp. 3d 224, 229–30, 232 (S.D.N.Y. 2019) (concluding that the plaintiff had adequately alleged an intent to discriminate where he asserted that employees of certain defendants laughed at one another's use of racial epithets); *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Loc. 15, 15a, 15c & 15d, AFL-CIO v. Tightseal Constr. Inc.*, No. 17-CV-3670, 2018 WL 3910827, at *7 (S.D.N.Y. Aug. 14, 2018) (holding that a plaintiff had plausibly alleged an intent to discriminate where it was asserted that a defendant "terminated [certain] agreements due to racial animus directed principally at" that plaintiff's CEO as evidenced by various racist statements allegedly made by the relevant defendant's employees).  Simply put, because Plaintiff has failed to "sufficiently allege that defendants acted with discriminatory intent," *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015), Plaintiff has failed to state a Section 1981 claim of discrimination and retaliation.  Accordingly, Defendants' Motion is granted as to Plaintiff's Seventh Cause of Action.

### 6.  NYSHRL Aiding and Abetting (Eleventh Cause of Action)

"Under the NYSHRL's aiding-and-abetting provision, it is an unlawful discriminatory practice 'for any person to aid, abet, incite, compel[,] or coerce the doing of any of the acts forbidden under [the NYSHRL], or attempt to do so.'"  *Johnson v. Stop & Shop Supermarket Co., LLC*, No. 22-CV-9691, 2024 WL 1217074, at *15 (S.D.N.Y. Mar. 21, 2024) (quoting N.Y. Exec. Law § 296(6)).  "An individual may be liable for aiding and abetting unlawful discriminatory acts if the individual 'actually participates in the conduct giving rise to a

discrimination claim,' even though that individual lacked the authority to hire or fire the plaintiff." *Santana v. Mount Vernon City Sch. Dist./Bd. of Educ.*, No. 20-CV-3212, 2021 WL 4523770, at *15 (S.D.N.Y. Sept. 30, 2021) (emphasis added) (quoting *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)); *see also Warren v. Ultimate Fitness Grp., LLC*, No. 19-CV-10315, 2021 WL 4239246, at *5 (S.D.N.Y. Sept. 17, 2021) (explaining that, to state an aiding and abetting claim under the NYSHRL, "a [p]laintiff must demonstrate that the non-employer had 'direct, purposeful participation' in the primary violation of the NYSHRL" (emphasis added) (citing *Dodd v. City Univ. of N.Y.*, 489 F. Supp. 3d 219, 268 (S.D.N.Y. 2020))).  In other words, an alleged "aider and abettor must 'share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose.'"  *Warren*, 2021 WL 4239246, at *5 (quoting *Fried v. LVI Servs., Inc.*, No. 10-CV-9308, 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011)); *accord Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21-CV-2512, 2022 WL 524551, at *13 (S.D.N.Y. Feb. 22, 2022) ("[A]iding and abetting liability [under the NYSHRL] does not attach to a supervisor unless the facts alleged demonstrate that the aider and abettor shared the intent or purpose of the principal actor.").  "It follows, that, as a predicate to claiming aiding and abetting discrimination, a plaintiff must have pled discrimination by a principal."  *Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 333 (S.D.N.Y. 2024) (citing *Xiang v. Eagle Enters., LLC*, No. 19-CV-1752, 2020 WL 248941, at *5–6 (S.D.N.Y. Jan. 16, 2020)).

Defendants argue that Plaintiff cannot state a claim of aiding and abetting because Plaintiff has not pled a sufficient predicate and because neither von Sengbusch nor Howell can be held liable.  (*See* Defs' Mem. 18–21.)  Defendants are correct that a valid claim for discrimination or retaliation is a "precondition to a valid aiding and abetting claim under the

NYSHRL." *Rossbach v. Montefiore Med. Ctr.*, No. 19-CV-5758, 2021 WL 930710, at *7

(S.D.N.Y. Mar. 11, 2021). As discussed above, however, Plaintiff has plausibly stated a claim

for discrimination in relation to his demotion. *See* supra Section II.C.1.

Defendants argue that Plaintiff has "fail[ed] to set forth a connection between the acts of

Ms. Howell or Ms. [v]on Sengbusch and his protected categories that could establish

discriminatory intent." (Defs' Reply 8.) But Plaintiff is not required to plead such a connection

for the purposes of aiding and abetting liability. Rather, Plaintiff must allege that the individual

directly participate in the primary NYSHRL violation. *See Dodd*, 489 F. Supp. 3d at 268.

Plaintiff has failed to do so. Plaintiff's allegations regarding von Sengbusch are few and far

between. First, he alleges in a wholly conclusory fashion "[u]pon information and belief" that

von Sengbusch "blocked" his promotion and salary increases. (Am. Compl. ¶ 13.) Although

allegations based "upon information and belief" are not necessarily facially deficient, "the words,

however, are not magic; a plaintiff cannot 'plop "upon information and belief" in front of a

conclusory allegation and thereby render it non-conclusory.'" *zuMedia Inc. v. IMDb.com, Inc.*,

No. 23-CV-8472, 2024 WL 4566551, at *3 (S.D.N.Y. Oct. 24, 2024) (quoting *J & J Sports*

*Prods., Inc. v. Gonzalez*, No. 18-CV-2319, 2019 WL 3716197, at *5 (E.D.N.Y. May 9, 2019),

(quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018)), *report and*

*recommendation adopted*, 2019 WL 4888635 (E.D.N.Y. Sept. 30, 2019)). In any case, even if

Plaintiff's allegations were plausible, it would be untimely. The alleged blocking of his

promotion and transfer occurred "in or around 2016," (Am. Compl. ¶ 10), and, as discussed

above, only allegations concerning circumstance occurring after August 4, 2019, are timely

under NYSHRL, *see* supra Section II.B.2.b. As for the remaining timely allegations, Plaintiff

also alleges that von Sengbusch "rebuffed Plaintiff's request" to discuss workplace issues he was

experiencing, (*see* Am. Compl. ¶ 32), and that she directed Howell to bring about Plaintiff's

resignation, (*see id.* ¶¶ 17–18, 33).  Similarly, Plaintiff's allegations concerning Howell fail to

connect her to his demotion.  While she did assign him menial tasks upon his return from FMLA

leave, (*id.* ¶ 45), he does not allege that she demoted him.  Rather, he alleges that "*Siemens*

officially took away Plaintiff's financial duties and assigned them entirely to his assistant."  (*Id.*

¶ 50 (emphasis added).)  These conclusory allegations do not suffice to establish aiding and

abetting liability for von Sengbusch and Howell.  *See Robinson v. MSG Entertainment Grp.,*

*LLC*, No. 23-CV-9366, 2024 WL 3938361, at *18 (S.D.N.Y. Aug. 26, 2024) (dismissing aiding

and abetting claim where plaintiff "[did] not adequately plead [individual defendants']

participation in his termination"); *Dingman v. Fuji Japanese Steakhouse Sushi Inc.*, No. 20-CV-

4850, 2022 WL 4650860, at * 13 (S.D.N.Y. Sept. 30, 2022) (dismissing aiding and abetting

claim where plaintiff "offer[ed] no factual support or allegations that [individual defendant]

assisted in other individual's discriminatory conduct"); *cf. Bueno v. Eurostars Hotel Co., S.L.*,

No. 21-CV-535, 2022 WL 95026, at *9 (S.D.N.Y. Jan. 10, 2022) (denying a motion to dismiss

an aiding and abetting claim where plaintiff alleged that the individual defendant actually

participated in plaintiff's termination because "he was allegedly the main decisionmaker in

[plaintiff's] termination").  Accordingly, Defendants' Motion is granted as to Plaintiff's Eleventh

Cause of Action.

### III.  Conclusion

Defendants' Motion is granted as to the First, Second, Fourth, Fifth, Seventh, Ninth,

Tenth, and Eleventh Causes of Action and denied as to the Third, Sixth, and Eighth Causes of

Action.  The dismissal is without prejudice.  *See Spira v. Trans Union, LLC*, No. 21-CV-2367,

2022 WL 2819469, at *6 (S.D.N.Y. July 19, 2022).  To the extent that Plaintiff has a good faith

basis for filing a second amended complaint that addresses the deficiencies discussed in this

Opinion, he must do so within 30 days of this Opinion.  The second amended complaint will

replace, not supplement, the previous complaints.  The Clerk of the Court is respectfully directed

to terminate the pending Motion.  (Dkt. No. 34.)

SO ORDERED.

Dated:    March 18, 2025
          White Plains, New York

_____
    KENNETH M. KARAS
    United States District Judge