UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARKLAND HAMILTON,

                *Plaintiff*,

    v.

SIEMENS HEALTHCARE DIAGNOSTICS,
INC., *d/b/a* SIEMENS HEALTHINEERS AG,
SABINE VON SENGBUSCH, *and* RENEE
HOWELL,

                *Defendants*.

No. 23-CV-7408 (KMK)

ORDER & OPINION

---

Appearances:

Horatio G. Mihet, Esq.
Kristina S. Heuser, Esq.
Liberty Counsel
Orlando, FL
*Counsel for Plaintiff*

Kelly M. Cardin, Esq.
Janae C. Cummings, Esq.
Littler Mendelson, P.C.
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      Markland Hamilton ("Plaintiff") brings this Action against Siemens Healthcare

Diagnostics, Inc., doing business as Siemens Healthineers AG ("Siemens"), Sabine von

Sengbusch ("von Sengbusch"), and Renee Howell ("Howell") (collectively, "Defendants"),

alleging Defendants unlawfully maintained a hostile work environment and discriminated and

retaliated against Plaintiff on the basis of his religion and sex in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII"), the New York State Human Rights Law (the "NYSHRL"), and

the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, et seq.  (*See generally* Second Am. Compl. ("SAC") (Dkt. No. 54).)  Before the Court is Defendants' Partial Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion").  (*See* Not. of Mot. (Dkt. No. 66).)  For the following reasons, Defendants' Motion is granted in part and denied in part.

## I.  Background

A.  Factual Background

The following facts are drawn from Plaintiff's Second Amended Complaint ("SAC") and are presumed to be true for the purpose of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff is "a devout and principled Catholic Christian" who is "married with eight children."  (SAC ¶ 1 (Dkt. No. 54).)  Plaintiff has been employed by Siemens for fifteen years and has worked as a Junior Clinical Research Specialist for the last four years.  (*Id.* ¶¶ 11–12.)  Siemens is a German company with a subsidiary located in Westchester, New York.  (*Id.* ¶ 8.)  Von Sengbusch was, until her recent retirement at an unspecified date, the vice president in charge of the division of Siemens in which Plaintiff works.  (*Id.* ¶ 9.)  Howell was Plaintiff's immediate supervisor until von Sengbusch's retirement, at which point Howell was promoted to Vice President.  (*Id.* ¶ 10.)

Beginning at an unspecified time in 2020, Siemens employees were directed to work from home due to the COIVD-19 pandemic.  (*Id.* ¶ 13.)  During this time, in December 2020, Howell became Plaintiff's direct supervisor.  (*Id.* ¶ 14.)  According to Plaintiff, his previous manager had been directed by von Sengbusch "to block Plaintiff's attempts at advancement[,]"

and "Howell almost immediately set upon a course of conduct aimed at bringing about Plaintiff's resignation, which [he] believes she did at the behest of" von Sengbusch.  (*Id.* ¶¶ 15–16.)

According to Plaintiff, in January 2021, Howell initiated a Human Resources ("HR") investigation into Plaintiff "without cause."  (*Id.* ¶ 17.)  The investigation ended in April 2021 with HR concluding that Plaintiff had committed no wrongdoing.  (Id. ¶ 18.)  On April 8, 2021, Howell "was dismissive of Plaintiff in a meeting in the presence of his female assistant and another female colleague" and told Plaintiff "in sum and substance, that his ideas were bad and she was not interested in listening to them."  (*Id.* ¶ 19.)

On or around June 15, 2021, Howell "accused Plaintiff of not doing his job and being overly concerned with assisting a particular coworker[,]" who Plaintiff had been assisting at the direction of von Sengbusch.  (*Id.* ¶ 20.)  On June 23, 2021, "Howell was again unprofessional and combative towards Plaintiff in a meeting in front of Plaintiff's co-worker."  (*Id.* ¶ 21.)  On June 28, 2021, Howell "directed Plaintiff to draft an 'improvement plan' for himself[.]"  (*Id.* ¶ 22.)  Although Plaintiff complied and sent Howell the document by the July 30, 2021 deadline she set for him, Howell did not acknowledge receipt and failed to respond to Plaintiff's follow-up emails regarding the document.  (*Id.* ¶¶ 22–24.)  On June 29, 2021, Howell "again demeaned and embarrassed Plaintiff in a meeting in front of co-workers" by telling him to "be quiet" or "stop talking" whenever he tried to contribute to the meeting.  (*Id.* ¶ 25.)

On July 13, 2021, Plaintiff called Howell to discuss their working relationship.  (*Id.* ¶ 26.)  During the call, Plaintiff expressed that he wanted "their working relationship to be better and that his job duties did not align with his official title nor his salary."  (*Id.*)  In response, Howell called Plaintiff "belligerent" and told him "your job is whatever I say it is."  (*Id.*)  In August 2021, Howell again accused Plaintiff of being "belligerent" when he asked her for a

salary increase.  (*Id.* ¶ 27.)  When Plaintiff asked Howell if they could address his request for a salary increase with HR, Howell agreed, but no meeting ever occurred.  (*Id.* ¶ 28.)

In September 2021, Siemens implemented a mandatory COVID-19 vaccination policy for all employees.  (*Id.* ¶ 29.)  Plaintiff requested and was granted a temporary three-month religious accommodation, which would allow him to continue to work from home for ninety days.  (*Id.* ¶¶ 30–31.)

In December 2021, Howell "spoke so aggressively and disrespectfully to Plaintiff in a []virtual[] meeting" that coworkers reached out to him afterwards to ask if he was okay.  (*Id.* ¶ 32.)  Later that day, Plaintiff had a prescheduled meeting with Howell to receive his year-end review.  However, instead of giving Plaintiff his formal review, Howell told Plaintiff "a lot of bad things happened this year."  (*Id.* ¶ 33.)  Without a formal review, Plaintiff could not receive an "incremental or cost of living pay increase."  (*Id.*)  Following these events, Plaintiff contacted HR, and an HR representative encouraged him to reach out to von Sengbusch for help instead of lodging a formal HR complaint.  (*Id.* ¶ 34.)  Plaintiff sent an email to von Sengbusch requesting a meeting to discuss "some workplace issues he was experiencing."  (*Id.* ¶ 35.)  Plaintiff was deliberately vague in his email but planned to provide additional details at the meeting.  (*Id.*)  Without asking for additional details, von Sengbusch "rebuffed Plaintiff's request . . . [and] responded that it was highly irregular and improper for Plaintiff to communicate with her directly."  (*Id.*)  Von Sengbusch also copied Howell on her email response to Plaintiff.  (*Id.*)

In early January 2022, Plaintiff made a request to use accrued leave to stay home for the birth of his eighth child.  (*Id.* ¶¶ 37–38.)  However, Plaintiff was notified by an HR representative that his request was denied because "Howell insisted that she need[ed] Plaintiff to return to the office immediately."  (*Id.* ¶ 38.)  Plaintiff then requested and was granted FMLA

leave, during which Plaintiff was not paid. (*Id.* ¶¶ 41–42.) As the expiration of Plaintiff's FMLA leave drew near, Howell reached out to Plaintiff to ask if he was planning to return to work, and Plaintiff confirmed that he would return. (*Id.* ¶ 43.)

Prior to the end of his FMLA leave, Plaintiff was notified that Siemens had dropped its COVID-19 vaccine mandate. (*Id.* ¶ 44.) Howell subsequently informed Plaintiff that she was requiring him to return to work in the office on a full-time basis. (*Id.* ¶ 45.) Plaintiff had, at some point prior, moved to Pennsylvania and was the only employee "singled out for mandatory in-person work[]." (*Id.* ¶ 46.) According to Plaintiff, Howell knew that Plaintiff had moved to Pennsylvania and "that coming into the office everyday would cause him extreme hardship." (*Id.* ¶ 45.) On April 12, 2022, Plaintiff arrived at the office for his first day back to work and was met by Howell who directed him to clean out a supply closet and told Plaintiff "don't cause trouble for us." (*Id.* ¶ 49.) Although this assignment was not within the scope of his job duties, Plaintiff interpreted Howell's comment as a threat not to complain. (*Id.* ¶ 49.) Prior to his return to office, Plaintiff's responsibilities were administrative, including "handling all of the financial work for his [clinical trial] group," and "did not require an in-person presence." (*Id.* ¶ 48.) Upon Plaintiff's return to in person work, Howell sent an email "to the entire group advising them of the [cleaning] assignment" and directing Plaintiff's colleagues to communicate with Plaintiff's then-assistant about "all of the tasks Plaintiff would normally handle for the group . . . ." (*Id.* ¶¶ 50–51.) After completing the cleaning task "within a week or two," Plaintiff went to Howell for a new assignment. (*Id.* ¶ 55.) She did not give him one but "continued to require Plaintiff to work in the office each day—alone." (*Id.*)

On April 17, 2022, Plaintiff filed a formal complaint with HR and also reached out to the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 54.) On May 4, 2022, Plaintiff

filed a charge of discrimination with the EEOC. (*Id.*) In response to Plaintiff's complaint, HR "directed that Plaintiff be permitted to resume working from home . . . [and] acknowledged that Plaintiff [had been] singled out for in person working for no legitimate reason." (*Id.* ¶ 57.) However, when Plaintiff requested a written copy of HR's findings, "he was denied access to the report" but was told "that some of his allegations were substantiated." (*Id.* ¶ 58.) "At some point thereafter, Siemens officially took away Plaintiff's financial duties and assigned them entirely to his assistant, promoting her to the position of Financial Analyst and giving her a salary that, upon information and belief, exceeded Plaintiff's." (*Id.* ¶ 59.) On June 14, 2023, the EEOC issued Plaintiff's right-to-sue letter. (*Id.* ¶ 62; *see also* SAC, Ex. A (Dkt. No. 54-1).)

B. Procedural Background

Plaintiff initiated this Action on August 21, 2023. (*See* Compl. (Dkt. No. 1).) On January 29, 2024, Plaintiff filed his First Amended Complaint. (*See* First Am. Compl. (Dkt. No. 23).) On April 12, 2024, Defendants moved to dismiss Plaintiff's First Amended Complaint. (*See* Not. of Mot. (Dkt. No. 34).) On May 10, 2024, Plaintiff filed his Opposition. (*See* Pl.'s Mem. in Opp. to Mot. (Dkt. No. 38).) On May 24, 2024, Defendants replied. (*See* Defs.' Reply in Supp. of Mot. (Dkt. No. 40).) On March 18, 2025, the Court granted Defendants' Motion in part and denied Defendants' Motion in part. (*See* Order & Opinion (Dkt. No. 41).) *See Hamilton v. Siemens Healthcare Diagnostics, Inc.*, No. 23-CV-7408, 2025 WL 863572, at *1 (S.D.N.Y. Mar. 18, 2025). The Court gave Plaintiff thirty days to file a second amended complaint addressing the deficiencies identified in the Court's Opinion. *Hamilton*, 2025 WL 863572, at *18.

On May 28, 2025, Plaintiff filed his Second Amended Complaint. (*See* SAC.) On June 11, 2025, Defendants requested leave to file a partial motion to dismiss Plaintiff's Second

6

Amended Complaint.  (*See* Letter from Kelly M. Cardin, Esq. to Court (June 11, 2025) (Dkt. No. 55).)  On June 25, 2025, Plaintiff filed his response.  (*See* Letter from Kristina S. Heuser, Esq. to Court (June 25, 2025) (Dkt. No. 59).)  On July 9, 2025, the Court set a briefing schedule.  (*See* Mot. Scheduling Order (Dkt. No 65).)  On August 11, 2025, Defendants filed the instant Motion.  (*See* Not. of Mot. (Dkt. No. 66); Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 67); Decl. of Kelly M. Cardin, Esq. in Supp. ("Cardin Decl.") (Dkt. No. 68).)  On September 8, 2025, Plaintiff filed his Opposition.  (*See* Pl.'s Mem. of Law in Opp. ("Pl.'s Opp.") (Dkt. No. 71).)  On September 22, 2025, Defendants filed their reply.  (*See* Defs.' Reply Mem. of Law ("Defs.' Reply") (Dkt. No. 72).)

## II.  Discussion

Plaintiff alleges the following Title VII claims against Siemens:  disparate treatment on the basis of religion (First Cause of Action) and on the basis of sex (Second Cause of Action); retaliation (Third Cause of Action); and hostile work environment (Fourth Cause of Action). (SAC ¶¶ 63–88.)  Plaintiff also alleges the following NYSHRL claims against Siemens: discrimination (Sixth Cause of Action); hostile work environment (Seventh Cause of Action); retaliation (Eighth Cause of Action); and aiding and abetting (Ninth Cause of Action).  (*Id.* ¶¶ 92–99.)  Additionally, Plaintiff asserts a FMLA claim for retaliation against Siemens (Fifth Cause of Action).  (*Id.* ¶¶ 89–91.)  Defendants move to dismiss Plaintiff's First, Third, Fourth, Fifth, Seventh, Eighth, and Ninth Causes of Action.  (*See* Defs.' Mem. 5–17.)

## A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[ ] across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B.  Analysis

    1.  Timeliness

        a.  Title VII

Plaintiff's Second Amended Complaint contains numerous allegations concerning events that occurred prior to October 8, 2021.  However, due to the EEOC's statute of limitation for filing a charge of discrimination, this Court previously found that "events alleged to have occurred prior to October 8, 2021, 'are not actionable independently and are time-barred with respect to Plaintiff's [Title VII] discrimination and retaliation claims for relief.'" *Hamilton*, 2025 WL 863572, at *8 (citations omitted).

"The law of the case doctrine commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'" *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002).  Plaintiff's SAC does not raise any arguments as to why the Court should revisit its prior ruling on the timeliness of his Title VII allegations.  (*See generally* SAC.)  Accordingly, to the extent

9

Plaintiff seeks to rely on events that occurred prior to October 8, 2021 to support his Title VII claims, they are disregarded.

### b. NYSHRL

NYSHRL claims have a three-year statute of limitations. *Franchitti v. Cognizant Tech. Sols. Corp.*, No. 21-CV-2174, 2022 WL 2657171, at *8 (S.D.N.Y. July 8, 2022). While the Second Circuit has held that "filing an EEOC charge does not toll the limitations period for state-law tort claims, even if those claims arise out of the same factual circumstances as the discrimination alleged in the EEOC charge," *Castagna v. Luceno*, 744 F.3d 254, 255 (2d Cir. 2014), courts in this District hold that *Castagna* does not extend to NYSHRL claims, *see, e.g.*, *Kirkland-Hudson v. Mount Vernon City School Dist.*, 665 F. Supp. 3d 412, 446–47 (collecting cases). Accordingly, the Court holds that the filing of the EEOC Charge on August 4, 2022, tolled Plaintiff's NYSHRL claims such that any allegations occurring after August 4, 2019, are timely. *See id.* at 447 ("Because the 'overwhelming weight of authority within the [Second] Circuit holds that filing a charge with the EEOC tolls the statute of limitations for any related claims under the NYSHRL,' . . . the filing of the EEOC charge on June 2, 2020, tolled plaintiff's NYSHRL claims [so]. . . any allegations occurring after June 2, 2017 are timely." (quoting *Franchitti*, 2022 WL 2657171, at *8)); *see also Schneider v. Wal-Mart Stores, Inc.*, No. 16-CV-2010, 2019 WL 294309, at *3 (S.D.N.Y. Jan. 23, 2019) (collecting cases supporting the proposition that "numerous courts in [the Second] Circuit have determined that filing an EEOC charge" tolls the three-year statute of limitations on NYSHRL claims); *Allen v. N.Y.C. Dept. of Env't. Prot.*, 51 F. Supp. 3d 504, 511 n.5 (S.D.N.Y. 2014) (calculating the tolling period based on the dates on which the plaintiff filed his EEOC charge, received his right-to-sue letter, and filed his complaint).

10

### 2. Title VII Religious Discrimination (First Cause of Action)

Plaintiff raises a Title VII claim for disparate treatment on the basis of his religion. (SAC ¶¶ 63–65.) To sustain a Title VII disparate treatment claim at the motion to dismiss stage, "absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) (quoting *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015)) (internal citation marks omitted).

Plaintiff meets the first requirement for pleading a Title VII claim by alleging that he is "a committed Catholic Christian . . . ." (SAC ¶ 64); *see* 42 U.S.C. § 2000e–2(a) (prohibiting employers from discriminating against individuals on account of religion). Although Plaintiff does not explicitly allege that he is qualified for his job, Siemens does not appear to dispute that he is qualified for his position. (*See generally* Defs.' Mem.; Defs.' Reply). Defendants argue that Plaintiff's First Cause of Action should be dismissed because he fails to allege a connection between any adverse employment action and his religious beliefs. (Defs.' Mem. 6–8.)

#### a. Adverse Employment Action

Prior to the Supreme Court's 2024 decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), to state a claim for discrimination in violation of Title VII, a plaintiff was required to allege a "materially adverse employment action." Under that standard, "[a]n adverse employment action [was] 'a materially adverse change in the terms and conditions of employment.'" *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (emphasis omitted) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). The Second Circuit has instructed that:

11

> To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.

*Id.* (quoting *Sanders*, 361 F.3d at 755). However, *Muldrow* changed this standard by holding that to allege an adverse employment action, a plaintiff need not "show . . . that the harm incurred was significant[] [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Muldrow*, 601 U.S. at 355. The Court determines that Plaintiff has alleged multiple adverse employment actions that would survive even the more-rigorous pre-*Muldrow* standard.[1]

As noted by Defendants, the Court found that Plaintiff alleged two adverse employment actions in his First Amended Complaint: "the assignment of duties outside the scope of his job title and his demotion in relation to his former assistant[,]" *Hamilton*, 2025 WL 863572, at *11, both of which Plaintiff re-alleges in his Second Amended Complaint, (SAC ¶¶ 49, 51.)

Plaintiff also re-alleges several other adverse employment actions from his First Amended Complaint, none of which the Court finds persuasive. First, Plaintiff alleges he was "passed over for a promotion and denied equitable pay." (Pl.'s Opp. 4 (citing SAC ¶¶ 1, 26–28, 70–71). Specifically, Plaintiff claims to have called Howell and requested a salary increase in August 2021. (*Id.* ¶ 27.) In response, Howell "oddly accused Plaintiff of being belligerent" despite his "consistently calm . . . demeanor while making the request[.]" (*Id.*) Although

---

[1] As one recent district court case has noted, there exists "some disagreement among district courts as to whether *Muldrow* applies to Title VII cases outside of the context of involuntary job transfers." *John v. Brooklyn Eye Ctr.*, No. 22-CV-6190, 2025 WL 317515, at *4 n.3 (E.D.N.Y. Jan. 28, 2025) (collecting cases). Because the allegations here suffice to state an adverse employment action even under the pre-*Muldrow* cases, this dispute has no bearing on the disposition of the Motion.

Plaintiff claims Howell initially agreed to discuss "the matter of a salary increase" and her "baseless accusation" with HR, no meeting with HR ever occurred.  (*Id.* ¶ 28.)  However, because these events took place prior to October 8, 2021, they are untimely for Plaintiff's Title VII claims.  *See Hamilton*, 2025 WL 863572, at *10 (finding Plaintiff's previous allegations regarding denial of transfer, promotion, and pay increase untimely for a Title VII claim).

Second, Plaintiff alleges he was "singled out for mandatory in-person work[]" after relocating to Pennsylvania while working remotely during the COVID-19 pandemic, (SAC ¶¶ 46–47), which the Court previously found to not qualify as an adverse employment action under existing precedent, *Hamilton*, 2025 WL 863572, at *10.  *See also Thompson v. Shutterstock, Inc.*, No. 23-CV-4155, 2024 WL 2943813, at *7–8 (S.D.N.Y. June 10, 2024) (concluding remote work denial was not an adverse employment action even under more lenient post-*Muldrow* standard).  Pursuant to the law of the case doctrine, discussed *supra*, the Court declines to revisit its prior determination because Plaintiff has not presented a reason for it to do so.  *See Zdanok v. Glidden, Co.*, 327 F.2d 944, 953 (2d Cir. 1964) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.").

Third, Plaintiff alleges he was "mercilessly harassed" by Howell, but the only instance that is timely for Title VII purposes is a December 2021 virtual meeting in which Howell "spoke so aggressively and disrespectfully to Plaintiff" that he was "humiliate[d] and emotionally jarr[ed]."  (SAC ¶ 32.)  However, this Court previously found "[t]hat Plaintiff was 'embarrassed [and] demeaned . . . do[es] not constitute [an] adverse employment action.'"  *Hamilton*, 2025 WL 863572, at *10 (quoting *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 55 (S.D.N.Y.

2019)).  Again, the Court declines to revisit its prior decision because Plaintiff has not presented a reason for it to do so.

Plaintiff also alleges that "[l]ater that same day" in December 2021 he had a "prescheduled, one-on-one meeting" with Howell to receive his year-end review.  (*Id.* ¶ 33.) However, Plaintiff alleges that Howell "did not give the expected formal review[,]" and instead told Plaintiff that "a lot of bad things happened this year." (*Id.*)  Without a formal review, Plaintiff could not receive "even an incremental or cost of living pay increase." (*Id.*)  Although the Second Circuit has not addressed whether this exact factual situation constitutes an adverse employment action, other district courts within the Second Circuit have found that "[f]ailing to increase an employee's compensation can be an adverse employment action if the increase was 'customary, expected, [and] warranted,' such that it could reasonably be considered part of the 'terms and conditions of the employment.'"  *Gupta v. Al Jazeera Am., LLC*, No. 16-CV-2980, 2018 WL 1605571, at *8 (S.D.N.Y. Mar. 29, 2018) (quoting *Leon v. Dep't of Educ.*, No. 15-CV-7275, 2017 WL 1157146, at *6 (S.D.N.Y. Mar. 27, 2017) (alteration in original) (collecting cases).  To establish that a salary increase was part of the terms and conditions of employment, a plaintiff must prove that the salary increase would have been "awarded as a matter of course or that he was otherwise entitled to reply upon it."  *Boyar v. City of New York*, No. 10-CV-65, 2010 WL 4345737, at *3 (S.D.N.Y. Oct. 28, 2010); *see also Gupta*, 2018 WL 1605571, at *8 (same). Additionally, courts outside the Second Circuit have found that events rendering a plaintiff ineligible for an automatic salary increase can constitute adverse employment action.  *See Turner v. Gonzales*, 421 F.3d 688, 696 (8th Cir. 2005) (finding that the performance rating downgrade and "[the plaintiff]'s resulting ineligibility for an *automatic* step salary increase based on time in grade . . . qualifies the performance rating downgrade as an adverse employment action because

14

it delayed an otherwise automatic salary increase . . . . In other words, in this case the performance rating downgrade directly forfeited a non-discretionary salary increase, detrimentally altering the terms and conditions of [the plaintiff]'s employment." (emphasis in original)); *Brewer v. Cornerstone Nutritional Labs, L.L.C.*, No. 05-CV-146, 2008 WL 222681, at *6 (D. Utah Jan. 25, 2008) ("The suspension of [the p]laintiff's annual review, which clearly resulted in the denial of [the p]laintiff's pay increase, is employment action that caused real harm to [the p]laintiff."). Here, Howell's refusal to give Plaintiff a yearly performance review constitutes an adverse employment action because it prevented Plaintiff from receiving an incremental adjustment in salary. *Cf. Knight v. MTA-New York City Transit*, No. 19-CV-1428, 2024 WL 4350417, at *18 n.19 (E.D.N.Y. Sept. 30, 2024) ("[The p]laintiff argues that her salary history indicates that there was one instance, in September 2014, when she did not receive [an incremental pay increase] to which she was entitled . . . . Drawing all inferences in favor of [the p]laintiff, the non-moving party, . . . [this] could be sufficient to create a disputed issue of material fact as to whether [the p]laintiff experienced an adverse employment action related to her compensation." (citations omitted)).

In sum, Plaintiff's SAC asserts three adverse employment actions: the assignment of duties outside the scope of Plaintiff's job title, his demotion in relation to his former assistant, and the denial of his yearly performance review and subsequent salary adjustment. (*See* SAC ¶¶ 33, 49–51.)

### b. Inference of Discrimination

To plead a Title VII claim, "a plaintiff must allege that the employer took adverse action against h[im] at least in part for a discriminatory reason, and []he may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a

plausible inference of discrimination." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). At this stage, "a plaintiff need only give plausible support to a minimal inference of a discriminatory motivation." *Id.* at 84 (citation and internal quotation marks omitted). "Yet 'a discrimination complaint must still at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed.'" *Johnson v. Rockland County BOCES*, No. 21-CV-3375, 2022 WL 4538452, at *10 (S.D.N.Y. Sept. 28, 2022) (alterations adopted) (quoting *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)).

A showing of an "inference of discriminatory motivation may be supported directly, such as by statements that an adverse employment action was related to [the] plaintiff's protected class, . . . or indirectly by an allegation that [the] plaintiff was treated different from and less favorably than similarly situated peers." *Roache v. Long Island R.R.*, 487 F. Supp. 3d. 154, 172 (E.D.N.Y. 2020) (first citing *Haskell v. Kaman Corp.*, 743 F.2d 113, 119 (2d Cir. 1984), and then *Marquez v. Starrett City Assocs.*, 406 F. Supp. 3d 197, 208–09 (E.D.N.Y. 2017)). "A plaintiff alleging discrimination based on disparate . . . treatment . . . must demonstrate . . . that [he] was subject to an adverse employment action and that a similarly situated employee not in the relevant protected group received better treatment." *Mejia v. White Plains Self Storage Corp.*, No. 18-CV-12189, 2020 WL 247995, at *4 (S.D.N.Y. Jan. 16, 2020); *see also Carter v. New Venture Gear, Inc.*, 310 F. App'x 454, 457 (2d Cir. 2009) (summary order) (quoting *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001)) (same); *Campbell v. County of Onondaga*, No. 04-CV-1007, 2009 WL 3163498, at *15 (N.D.N.Y. Sept. 29, 2009) (same). In making this comparison, it must be alleged the plaintiff "was similarly situated in all material respects to the individuals with whom [the plaintiff] seeks to compare [himself]." *Jenkins v. St.*

16

*Luke's-Roosevelt Hosp. Ctr.*, No. 09-CV-12, 2009 WL 3682458, at *7 (S.D.N.Y. Oct. 29, 2009) (citation and quotation marks omitted); *see also Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (same).  Alternatively, "a plaintiff also may create a 'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination."  *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 611–12 (E.D.N.Y. 2017) (quoting *Vega*, 801 F.3d at 87).

Plaintiff fails to plead a plausible inference of religious discrimination in relation to the three adverse employment actions identified above.  Throughout the SAC, Plaintiff makes general, conclusory allegations that there was "a culture of celebration of homosexuality and transgenderism" at Siemens that conflicts with his religious beliefs.  (SAC ¶ 69; *see, e.g., id.* ¶ 1 (describing Plaintiff's frustration with Siemens' "proverbial glass ceiling" which is "constructed of Siemens'[] hostility towards [Plaintiff]'s faith tradition and its incompatibility with . . . Siemens'[] so-called 'diversity, equity, and inclusion initiatives'" that favor "those expressing non-traditional sexual orientation or gender identity" for advancement); *id.* ¶ 68 (describing Siemens' "unabashed culture of praise for and solidarity with the homosexual and transgender movement"); *id.* ¶ 21 ("In other words, Defendants' actions were intended to be a pretext for retaliating against Plaintiff on the basis of his religious beliefs and convictions that Defendants believed incompatible with Siemens' agenda."); *id.* ¶ 67 ("As a result of Plaintiff's faith and, in particular, the fact that his fidelity to scriptural truth causes him to differ ideologically from his work superiors and many co-workers, Defendants have marginalized Plaintiff and denied him promotions and pay raises to which he is entitled."); *id.* ¶ 70 ("Defendants have subjected Plaintiff to disparate and retaliatory treatment in the workplace because he subscribes to religious beliefs that are in conflict with the beliefs elevated and promoted by Defendants.").  However, as

17

the Court found in its previous Opinion, these generic allegations are insufficient to support Plaintiff's religious discrimination claim because they do not tie any of the adverse employment actions he suffered to his religious beliefs. *Hamilton*, 2025 WL 863572, at *12; *see also Wallace v. Esper*, No. 18-CV-6525, 2019 WL 4805813, at *7 (S.D.N.Y. Sept. 30, 2019) (dismissing a claim where plaintiff failed to "articulate sufficient facts . . . to suggest that [any adverse] action occurred as a result of a [protected category]-based animus); *Idlisan v. N.Y.C. Health & Hosps. Corp.*, No. 12-CV-9163, 2013 WL 6049076, at *5 (S.D.N.Y. Nov. 15, 2013) (finding complaint did not plead "a plausible nexus" between the plaintiff's disability and the defendant's failure to hire him where it lacked allegations that defendant's employees "made comments or took actions" that could give rise to an inference of discrimination).

Furthermore, Plaintiff does not allege that he told anyone about his religion and does not allege even a single instance of Defendants or any other employee saying anything about his religion. (*See generally* SAC.)  While Plaintiff alleges that his co-workers know he has "many children, which is uncommon these days[,]" contrary to Plaintiff's assertion, having a large family is not "another indicator that [Plaintiff] is an adherent of the Catholic faith."  (SAC ¶ 65.) While Plaintiff claims that he "is known in his workplace to be a committed Catholic Christian based upon faith-based displays in his workspace, including crosses, scripture verses, and other religious imagery[,]" (*id.* ¶ 64), the Court cannot infer that Plaintiff's co-workers took notice of these displays, especially given the amount of time Plaintiff and his co-workers spent working remotely during the relevant time period, (*see id.* ¶ 13 ("Siemens shut down for a period of time in 2020 due to the onslaught of COVID-19.  Upon reopening, all employees were directed to work from home."; *id.* ¶ 46 (alleging Plaintiff "was singled out for mandatory in-person work[]" when "[n]o other employee was working in the office" after Siemens' reopened)).  Lastly, to the

18

extent Plaintiff claims his request for a religious exemption from the COVID-19 vaccine mandate revealed his religious, though not necessarily Catholic, beliefs, his exemption request was granted, (*see id.* ¶ 30), so Plaintiff cannot rely on it as evidence of religious discrimination. In sum, Plaintiff has offered nothing more than "bare assertions" and "conclusory allegations[,]" *Iqbal* 556, U.S. at 61, of religious discrimination, which will not suffice, *see Chinchilla v. N.Y.C. Police Dep't*, No. 23-CV-8986, 2024 WL 3400526, at *5 (S.D.N.Y. July 12, 2024) (concluding the plaintiff had failed to include sufficient, non-conclusory allegations to establish that hostility to the plaintiff's religion motived the denial of her COVID-19 vaccine accommodation request); *Bonilla v. City of N.Y.*, No. 22-CV-7113, 2023 WL 8372859, at *5 (S.D.N.Y. Dec. 4, 2023) ("Although [the plaintiff] alleges that hostility to her religious beliefs was the reason for the denial [of her religious accommodation request], these bald assertions are insufficient to state a claim.").

Additionally, Plaintiff attempts to make a showing of disparate treatment by arguing that no other employee Siemens was treated like him, but his allegations are too generic to support an inference of discrimination. Throughout his SAC, Plaintiff claims that "[b]ecause no other employee was subjected to assignments having nothing to do with their job description or work requirements, . . . [or] made the subject of communications to coworkers ensuring they were aware of said demotion, there is no other conclusion that can be drawn" except that Plaintiff was subjected to these adverse employment actions because of "his articulation of beliefs inconsistent with Siemens'[] diversity, equity, and inclusion efforts." (SAC ¶ 56; *see also id.* ¶ 60 (claiming "[n]o other employee was subjected to such treatment, and Defendants' treatment of Plaintiff . . . was solely on the basis of Plaintiff's . . . religious beliefs[] and Defendants' unlawful retaliatory motives" but failing to identify any specific, similarly situated employee who has been treated

19

better than Plaintiff); *id.* ¶¶ 70–71 (claiming "[n]o other employee is subjected to the hostility, retaliation, or blatantly unfavorable treatment suffered by Plaintiff" but failing to identify any specific, similarly situated employee who has been treated better than Plaintiff).)  While "[a] plaintiff may raise . . . an inference [of discrimination] by showing that [his] employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group[,]" *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000), he "must show evidence that []he was similarly situated in all material respects to the individual with whom []he seeks to compare h[im]self," *Beverly v. N.Y.C. Health & Hosps. Corp.*, No. 18-CV-8486, 2020 WL 5750828, at *4 (S.D.N.Y. Sept. 25, 2020) (citation omitted).  Plaintiff alleges that he was treated worse than any other employee, but he does not identify any specific, similarly situated employee of different religious beliefs who was shown preferable treatment by Defendants.  (*See generally* SAC).  This "generic allegation of disparate treatment . . .  is insufficient to support [a protected class] discrimination claim." *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 99–100 (S.D.N.Y. 2023).  To survive a motion to dismiss, a Title VII plaintiff must "identify at least one comparator." *Id.* (internal citation and quotation marks omitted); *see also Balogun v. N.Y. State Div. of Hum. Rts.*, No. 22-CV-2756, 2023 WL 8446743, at *2 (2d Cir. Dec. 6, 2023) (summary order) ("Without a similarly situated comparator, [a plaintiff] cannot show circumstances that give rise to an inference of discrimination" (citation omitted)); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) (dismissing a discrimination claim that failed to identify a single specific comparator).

Lastly, Plaintiff has not alleged a mosaic of intentional discrimination that gives rise to an inference of discrimination.  While Plaintiff does allege "bits and pieces of evidence" that he

20

believes amount to intentional discrimination, Plaintiff's subjective belief that he was treated differently because of his religion is not enough to support an inference of discrimination. *See Majied v. N.Y.C. Dep't of Educ.*, No. 16-CV-5731, 2018 WL 333519, at *3 (S.D.N.Y. Jan. 8, 2018) (finding that "[the plaintiff's] subjective belief that she was treated differently on account of a disability is plainly not enough to state a claim" and that dismissal was appropriate because "[the] plaintiff [had] not pled any connection between a disability and an adverse employment action"); *see also Hamilton*, 2025 WL 863572, at *12 (finding the same allegations in Plaintiff's First Amended Complaint insufficient to create a "mosaic of intentional discrimination"). Because Plaintiff has shown no factual connection between the adverse employment actions and his religion, he has "done no more than point to various ways in which [he] feels he was mistreated and argue that it must have been because of" his religion. *Campbell v. N.Y. City Trans. Auth.*, 93 F. Supp. 3d 148, 173 (E.D.N.Y. 2015). "This is not sufficient to sustain a claim of discrimination." *Id.*; *see also Howard v. City of New York*, 602 F. App'x 545, 547 (2d Cir. Mar. 4, 2015) (summary order) (analyzing Section 1981 race discrimination claim, noting that remarks by someone other than a decision-maker, tied to adverse action by nothing more than 'mere speculation' do not support an inference that adverse action was motivated by bias); *Howard*, 602 F. App'x at 548 ("In sum, [plaintiff] has done little more than cite to his alleged mistreatment and ask the court to conclude that 'it must have been related to his race. This is not sufficient.'" (quoting *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001)); *Dorfman v. Doar Commc'ns, Inc.*, 314 F. App'x 389 390–91 (2d Cir. 2009) ("The incidents upon which Appellant bases his claim . . . lack any hint of age discrimination beyond that provided by mere speculation." (citation omitted)).

In the absence of any circumstantial evidence of discriminatory animus other than the differential treatment, the inference that the difference in treatment is attributable in part to discrimination would be based on speculation rather than on evidence or a rational inference." *Campbell*, 93 F. Supp. 3d at 173 (citation omitted).  Accordingly, Defendants' Motion is granted as to Plaintiff's First Cause of Action.  *See Beverly*, 2020 WL 5750828, at *4 ("When a plaintiff does not plead facts that would permit a court to infer that []he was similarly situated in all material respects to h[is] coworkers, [his] [claim] must be dismissed." (citing *Eng v. City of New York*, No. 15-CV-1282, 2016 WL 750251, at *3 (S.D.N.Y. Feb. 19, 2016)); *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 249 (E.D.N.Y. 2015) ("[N]aked assertions of discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss." (quoting *Doe v. Columbia Univ.*, No. 14-CV-3573, 2015 WL 1840402, at *7 (S.D.N.Y. Apr. 21, 2015) (alterations adopted)); *Bivens v. Inst. for Comm. Living, Inc.*, No. 14-CV-7173, 2015 WL 1782290, at *7 (S.D.N.Y. Apr. 17, 2015) ("A claim is properly dismissed where [the] plaintiff 'fails to plead any facts that would create an inference that any adverse action taken by . . . any defendant was based upon a protected characteristic of the plaintiff.'" (internal quotation marks, brackets, and ellipses omitted) (quoting *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)).

### 3.  Title VII and NYSHRL Retaliation (Third and Eighth Causes of Action)[2]

Plaintiff also claims that he was retaliated against for "fil[ing] both internal and external complaints of discrimination" against Defendants in violation of Title VII and NYSHRL.  (SAC

---

[2] Defendants' Opposition argues for the dismissal of Plaintiff's NYSRHL retaliation claim but identifies it as his Fifth Cause of Action, which is actually his FMLA retaliation claim. (*See* Defs.' Mem. 6; SAC ¶¶ 89–91, 96–97.)  Because the substance of Defendants' briefing

¶¶ 78–80, 96–97.)  Defendants argue that Plaintiff's retaliation claims fail because his alleged protected activities post-date the adverse employment actions identified in the SAC.  (Defs.' Mem. 10 (citing SAC ¶¶ 50–51, 54).)

Title VII and NYSHRL prohibit an employer from "discriminat[ing] against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a); N.Y. Exec. Law § 296(e).  In other words, the statutes "forbid[] an employer to retaliate against an employee for . . . complaining of employment discrimination prohibited by Title VII [and NYSHRL]."  *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006).  NYSHRL and Title VII retaliation claims were previously analyzed under the same standard.  *See, e.g., Vuona v. Merrill Lynch & Co., Inc.*, 919 F. Supp. 2d 359, 393 (S.D.N.Y. 2013) ("[I]t is well-established that the substantive standards for liability under NSYHRL and Title VII are coextensive: '[C]laims brought under [NYSHRL] are analytically identical to claims brought under Title VII.'" (quoting *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 107 n.10 (2d Cir. 2011)).  However, in 2019, the NYSHRL was amended so that it "aligns with the [New York City Human Rights Law ('NYCHRL')] standard for claims that accrued on or after October 11, 2019."  *Arazi v. Cohen Bros. Realty Corp.*, No. 20-CV-8837, 2022 WL 912940, at *16 (S.D.N.Y. Mar. 28, 2022).

To survive a motion to dismiss on a Title VII retaliation claim, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice."  *Vega*, 801 F.3d

---

concerns the standard for stating a retaliation claim under NYSHRL, the Court interprets Defendants' Opposition as arguing for Plaintiff's Eighth Cause of Action to be dismissed.

at 90 (citing 42 U.S.C. § 2000e-3(a)). Under Title VII, "for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.*

Post-amendment NYSHRL claims are assessed under a "similar but slightly broader standard." *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024). Under the NYSHRL, "a plaintiff claiming retaliation must demonstrate 'that []he took an action opposing h[is] employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.'" *Id.* (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013)).

Despite this change, Title VII and NYSHRL claims are still reviewed under the burden-shifting framework established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). *See Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 (2d Cir. 2025) ("We review retaliation claims brought pursuant to Title VII, NYSHRL, and NYCHRL under the familiar burden-shifting test established by the Supreme Court in *McDonnell-Douglas* . . . ."). In the Title VII context, a plaintiff is required to establish four elements: "(1) [he] was engaged in protected activity, (2) the alleged retaliator knew that plaintiff was involved in protected activity, (3) an adverse decision or course of action was taken against plaintiff and (4) a causal connection exists between the protected activity and the adverse action." *Atherley v. N.Y.C. Dep't of Educ.*, No. 23-CV-383, 2024 WL 1345741, at *11 (S.D.N.Y. Mar. 29, 2024) (quotation marks and citation omitted); *see also Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (same). "The NYCHRL and NYSHRL employ a more liberal standard: '[A] plaintiff claiming retaliation must demonstrate that []he took action an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from

24

engaging in such action.'"  *Edelman*, 141 F.4th at 45 (quoting *Qorrolli*, 124 F.4th at 122).  As set in more detail below, Plaintiff's retaliation claims falter under both statutes because he has not plead facts to support a plausible inference that his protected activity was either a but-for cause or a motivating factor in the adverse employment action he complains of.

> a.  Protected Activity

Plaintiff claims to have engaged in three protected activities—namely, the filing of two HR complaints and the EEOC Charge.  (*See* Pl.'s Opp. 8 (citing SAC ¶¶ 34, 54).)  Plaintiff also claims that his participation in the HR investigation Howell initiated into him in January 2021, "which was found to be wholly without merit" in April 2021, constitutes an additional protected activity.  (*Id.* (citing SAC ¶ 17–18).)

Plaintiff's filing of the EEOC Charge in May 2022 is clearly a protected activity.  *See, e.g.*, *Medina v. AAM 15 Mgmt. LLC*, 750 F. Supp. 3d 332, 345 (S.D.N.Y. 2024) ("[T]he case law is clear that plaintiffs engage in protected activity when they file . . . external discrimination complaints against their employer." (quoting *Lopez v. White Plains Hosp.*, No. 19-CV-6263, 2022 WL 1004188, at *13 (S.D.N.Y. Mar. 30, 2022) (collecting cases)).

The filing of an internal complaint with HR can constitute a protected activity if the complaint "complains or is critical about the discriminatory employment practices of [the] employer."  *Littlejohn*, 795 F.3d at 318 (alterations adopted) (quotation marks omitted).  Plaintiff's formal HR complaint on April 17, 2022, clearly meets this standard because it "detail[ed] the incidents of discrimination, retaliation, and hostility in the workplace [that] he was being subjected to . . . ."  (SAC ¶ 54.)  However, Defendants dispute that Plaintiff's conversation with an HR representative in December 2021 constitutes protected activity because

25

"Plaintiff does not allege that he complained about discrimination or retaliation." (Defs.' Mem. 11 (citing SAC ¶ 34).)

While it is true that Plaintiff's Second Amended Complaint does not use the words "discrimination" or "retaliation" to describe his conversation with the HR representative, Plaintiff claims to have "contacted [HR] and told a representative from that office what occurred[,]" which included "informing the representative of what had occurred not only at the [December 2021] meeting[s] but for the months leading up to it[.]" (*Id.* ¶¶ 33–34)  In prior paragraphs, Plaintiff characterized Defendants' conduct towards him as "pretextual [and] hostile" and alleged to have avoided going to HR with his complaint prior to December 2021 "out of fear of further hostility and retaliation[.]" (*Id.*)  However, in response to Defendants' Motion, Plaintiff concedes that he "does not currently recall [] and therefore has not specifically alleged [] whether he explicitly attributed Defendant Howell's maltreatment of him to discrimination on the basis of religion" in his December 2021 conversation with HR.  (Pl.'s Opp. 8.)  However, Plaintiff asserts that "this level of specificity in an internal complaint . . . is not required to sustain a retaliation claim." (*Id.* (citation omitted)).  Plaintiff goes on to argue that "[i]n view of the facts and circumstances surrounding [his] complaints, which HR was well aware of (i.e., Plaintiff being a Christian and not fitting into the corporate culture as a result . . . [citing SAC ¶¶ 1, 64–71, 73–77]), HR 'should have reasonably understood that Plaintiff was complaining about unlawful [] discrimination.'" (Pl.'s Opp. 9 (quoting *Moore*, 722 F. Supp. 3d at 255)).

While it is true that "[c]omplaints about conduct clearly prohibited by [Title VII and NYSHRL] need not mention discrimination or use particular language[,] . . . ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not

26

constitute protected activity." *Int'l Healthcare Ex., Inc. v. Global Healthcare Ex.*, LLC, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) (citations omitted). "The employee's complaint must be sufficiently pointed to be reasonably understood as a complaint [about] discrimination." *Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171, 187 (S.D.N.Y. 2020) (quoting *Goonewardena v. N. Shore Long Island Jewish Health Sys.*, No. 11-CV-2456, 2013 WL 1211496, at *9 (E.D.N.Y. Mar. 25, 2013); *Cardwell v. Davis Polk & Wardell LLP*, No. 19-CV-10256, 2020 WL 6274826, at *31 (S.D.N.Y. Oct. 24, 2020) (same). In other words, "a plaintiff 'must allege that h[is] employer was on notice that h[is] complaints were about statutorily prohibited discrimination, not just general unsatisfactory conduct.'" *Cornetta*, 434 F. Supp. 3d at 187 (quoting *Talwar v. Staten Island Univ. Hosp.*, 610 F. App'x 28, 30 (2d Cir. 2015) (summary order)) (alterations adopted). "Although particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory." *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013) (citations omitted).

In his SAC, Plaintiff alleges that during the December 2021 conversation, he "inform[ed] the [HR] representative of what had occurred not only at [his one-on-one] meeting [with Howell] but [in] the months leading up to it." (SAC ¶ 34.) However, in his Opposition, Plaintiff concedes that he "does not currently recall—and therefore has not specifically alleged—whether he explicitly attributed Defendant Howell's mistreatment of him to discrimination on the basis of his religion . . . in his [December 2021] complaint to [HR] . . . ." (Pl.'s Opp. 8.) Plaintiff goes on to argue that "this level of specificity in an internal complaint will be resolved in discovery and is not required to sustain a retaliation claim." (*Id.* (citation omitted).) However, *Moore v.*

27

*Hadestown Broadway L.L.C.*, 722 F. Supp. 3d 229 (S.D.N.Y. 2024), the case which Plaintiff cites in support of this argument, is not analogous to his SAC. In *Moore*, the plaintiff "specifically allege[d] that she complained to [the defendant's] human resources employee about 'anti-black' discrimination 'against her[,]'" which the court found sufficient for the defendant's HR representative to "have reasonably understood that [p]laintiff was complaining about unlawful racial discrimination." *Id.* at 255 (internal citation omitted). Here, Plaintiff's description of his December 2021 conversation with the HR representative is devoid of language suggesting he framed his description of Howell's behavior as discriminatory or unlawful. (*See* SAC ¶ 34.) Indeed, Plaintiff's description of his December 2021 complaint "d[oes] not refer to his [religion or any other protected characteristic] and thus cannot be reasonably understood as a complaint about discrimination." *Cardwell*, 2020 WL 6274826, at \*33. Accordingly, Plaintiff's December 2021 complaint "does not qualify as a protected activity that can serve as the basis for a retaliation claim" under either statute. *Id.*; *see also Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 124 (S.D.N.Y. 2020) ("'Mere complaints of unfair treatment . . . are not protected speech' in the employment retaliation context, and the 'onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally.'" (quoting *Brantman v. Fortistar Capital, Inc.*, No. 15-CV-4774, 2017 WL 3172864, at \*7 (S.D.N.Y. July 22, 2017)).

Lastly, Plaintiff's late-breaking contention that his participation in the HR investigation Howell initiated into him in January 2021 is a protected activity under the Title VII participation clause is without merit. The Second Circuit has squarely held that "the plain language of the [Title VII] participation clause does not include participation in an internal employer investigation unrelated to a formal EEOC charge." *Townsend v. Benjamin Enterprises, Inc.*, 679

28

F.3d 41, 49 (2d Cir. 2012); *see also Littlejohn*, 795 F.3d at 316 ("We have recently made clear that the participation clause only encompasses participation in formal EEOC proceedings[.]"). Plaintiff's description of this investigation makes no mention of a formal EEOC charge, (*see* SAC ¶¶ 17–18), so his participation in it cannot constitute a protected activity under Title VII's participation clause. *See Steele v. New York*, No. 20-CV-220, 2021 WL 1110769, at *5–6 (N.D.N.Y. Mar. 23, 2021) (finding the plaintiff's participation in an investigation surrounding his own disciplinary charges did not qualify as a protected activity under Title VII because the investigation was not conducted in response to a charge of discrimination before the EEOC); *Hagan v. City of New York*, 39 F. Supp. 3d 481, 515 (S.D.N.Y. 2014) ("Participation in an internal investigation, unrelated to a formal charge with the EEOC, is not protected activity under Title VII or its state and city counterparts." (citation omitted)); *Correa v. Mana Prods., Inc.*, 550 F. Supp. 2d 319, 329 (E.D.N.Y. 2008) ("[I]n order to gain protection under the participation clause, the participation must be in an investigation or proceeding covered by Title VII, and thus not in an internal employer investigation." (internal citation and quotation marks omitted)).

          b.  Timing and Causation

With only his April 17, 2022, HR complaint and the May 4, 2022, filing of his EEOC Charge as protected activities, Plaintiff's retaliation claims run into the same timing issues as in his First Amended Complaint.  As discussed supra in Section II.B.2.a, the assignment of duties outside the scope of Plaintiff's job, his demotion in relation to his former assistant, and Howell's refusal to give Plaintiff his yearly performance review constitute adverse employment actions.[3]

---

[3] Because Defendants do not challenge Plaintiff's substantive NYSHRL discrimination claim in this instant Motion, the Court has not yet had occasion to determine whether any of

However, each of these adverse employment actions took place *before* Plaintiff's April 17, 2022 and May 4, 2022 protected activities, (*see* SAC ¶¶ 32–33 (describing Howell's refusal to give Plaintiff a yearly performance review in December 2021); *id.* ¶¶ 49–52, 59 (describing how Howell began assigning Plaintiff menial tasks and effectively demoting him in relation to his then-assistant on April 12, 2022)).  An adverse employment action cannot serve as the basis for a retaliation claim if the action occurred before a plaintiff engaged in a protected activity, *see Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 974 F. Supp. 2d 240, 262 (S.D.N.Y. 2013) ("It is well settled that an adverse employment action cannot serve as the basis for a retaliation claim if the action was set in motion before a plaintiff engaged in protected activity."), *aff'd*, 641 F. App'x 60 (2d Cir. 2016) (summary order); *Paupaw-Myrie*,653 F. Supp. 3d at 103 ("Any actions before [the occurrence of the protected activities] cannot be considered adverse employment actions as a matter of law."  (citation omitted)).  Accordingly, Defendants' Motion is granted as to Plaintiff's Third and Eighth Causes of Action.

>    4.  Title VII and NYSHRL Hostile Work Environment (Fourth and Seventh Causes of Action)

This Court previously dismissed Plaintiff's hostile work environment claims as based on events that were not "plausibly objectively severe or pervasive enough to constitute a hostile work environment" and lacking causal connection to his protected characteristics.  *Hamilton*, 2025 WL 863572, at *16.  According to Defendants, the hostile work environment claims in Plaintiff's SAC fail to cure these deficiencies.  (*See* Defs.' Mem. 12–15.)

---

Defendants' actions between August 4, 2019, and August 4, 2022, constitute adverse employment actions in addition to the three identified in the Court's analysis of Plaintiff's Title VII religious discrimination claim supra Section II.B.2.a.  However, such analysis is unnecessary to evaluate Plaintiff's NYSHRL retaliation claim because any adverse employment actions that occurred during that time frame would pre-date Plaintiff's protected activities.

"A hostile work environment claim requires a showing [1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)); *see also Perkins v. U.S. Dep't of the Treasury*, No. 18-CV-8911, 2022 WL 19772, at *15 (S.D.N.Y. Jan. 3, 2022) (same). This standard applies to Plaintiff's Title VII and NYSHRL hostile work environment claims. *See Lopez*, 2022 WL 1004188, at *15 (S.D.N.Y. Mar. 30, 2022). "At the motion to dismiss stage, . . . a plaintiff need only plead facts sufficient to support the conclusion that []he was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for the worse." *Cowan v. City of Mount Vernon*, No. 14-CV-8871, 2017 WL 1169667, at *4 (S.D.N.Y. Mar. 28, 2017) (alterations, quotation marks, and citation omitted); *Kirkland-Hudson*, 665 F. Supp. 3d at 465 (same). The Second Circuit has held that "[p]roving the existence of a hostile work environment involves showing both objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (quotation marks and citation omitted). In determining whether a plaintiff has plausibly alleged an actionable hostile environment, courts must look at the "totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Littlejohn*, 795 F.3d at 321 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "[I]ncidents must be more than 'episodic; they must be

31

sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano*, 294 F.3d at 374 (quoting *Perry*, 115 F.3d at 149). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Id.* (citation omitted). "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." *Isbell v. City of New York*, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018) (quotation marks and citation omitted).

Plaintiff alleges that Defendants "subjected [him] to a hostile work environment" because he "is a Christian male" and filed "internal and external complaints of discrimination[.]" (SAC ¶ 82.) Specifically, he contends that "Defendants wanted to bring about [his] resignation[,] so they subjected him to awful working conditions by assigning him menial tasks[,] . . . requir[ing] him to perform assignments that were a significant alteration of his . . . job description, yell[ing] at him, belittl[ing] him in front of his coworkers." (*Id.* ¶ 83.) While Plaintiff spends much of his Second Amended Complaint emphasizing the "ridicule, mocking, yelling and harassing conduct" Defendants allegedly subjected him to, (*id.* ¶ 87), "excessive criticism and rudeness do not constitute a hostile work environment[,]" *Kirkland-Hudson*, 655 F. Supp. 3d at 466 (quoting *Ramirez v. Temin & Co.*, No. 20-CV-6258, 2021 WL 4392303, at *8 (S.D.N.Y. Sept. 24, 2021) (alteration omitted)). Further, "the assignment of menial tasks, including tidying[,]" are insufficient to make out a prima facie hostile work environment claim. *See Ramirez*, 2021 WL 4392303, at *8 (citing *Davis-Molina v. Port Auth. of N.Y. & N.J.*, No. 08-CV-7586, 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011) (finding that "diminished [job] responsibilities" "yell[ing] and talk[ing] down to," and an increased workload of menial tasks were insufficient to show that defendants' conduct was sufficiently severe or pervasive), *aff'd*, 488 F. App'x 530 (2d Cir. 2012) (summary order).

However, even assuming Plaintiff has sufficiently alleged a hostile work environment, he has failed to plausibly establish causation—that is, that any of the conduct he claims created a hostile work environment was the result of animus towards his religion or sex.  To the extent Plaintiff raises allegations to establish a connection between the alleged hostile work environment and his religion or sex, those allegations are wholly conclusory.  (*See* SAC ¶ 82 (claiming Defendants targeted Plaintiff "because he is a Christian male").)  Courts consistently dismiss similar cases where plaintiffs make only conclusory allegations regarding causation.  *See Royall v. City of Beacon*, No. 24-CV-3, 2024 WL 4266546, at *16 (S.D.N.Y. Sept. 23, 2024) (collecting cases); *Paupaw-Myrie*, 653 F. Supp. 3d at 106 (dismissing a hostile work environment claim where the plaintiff had not plausibly alleged that alleged discriminatory conduct arose from animus based on the plaintiff's protected category); *Varughese v. Mount Sinai Med. Ctr.*, No. 12-CV-8812, 2015 WL 1499618, at *42 (S.D.N.Y. Mar. 27, 2015) (finding it was "fallacy" for the plaintiff to say:  "I belong to a protected class; something bad happened to me at work; therefore, it must have occurred because I belong to a protected class.").  Accordingly, Defendants' Motion is granted as to Plaintiff's Fourth and Seventh Causes of Action.

### 5.  NYSHRL Aiding and Abetting (Ninth Cause of Action)

Lastly, Defendants challenge Plaintiff's claim that von Sengbusch and Howell are liable for aiding and abetting Siemens' NYSHRL violations.  (SAC ¶¶ 98–99.)  "Under the NYSHRL's aiding-and-abetting provision, it is an unlawful discriminatory practice 'for any person to aid, abet, incite, compel[,] or coerce the doing of any of the acts forbidden under [the NYSHRL], or attempt to do so.'" *Johnson v. Stop & Shop Supermarket Co., LLC*, No. 22-CV-9691, 2024 WL 1217074, at *15 (S.D.N.Y. Mar. 21, 2024) (alteration in original) (quoting N.Y. Exec. Law

33

§ 296(6)). "An individual may be liable for aiding and abetting unlawful discriminatory acts if the individual 'actually participates in the conduct giving rise to a discrimination claim,' even though that individual lacked the authority to hire or fire the plaintiff." *Santana v. Mount Vernon City Sch. Dist./Bd. of Educ.*, No. 20-CV-3212, 2021 WL 4523770, at *15 (S.D.N.Y. Sept. 30, 2021) (quoting *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)); *see also Warren v. Ultimate Fitness Grp., LLC*, No. 19-CV-10315, 2021 WL 4239246, at *5 (S.D.N.Y. Sept. 17, 2021) (explaining that, to state an aiding and abetting claim under the NYSHRL, "a [p]laintiff must demonstrate that the non-employer had 'direct, purposeful participation' in the primary violation of the NYSHRL" (citation omitted)). In other words, an alleged "aider and abettor must 'share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose.'" *Warren*, 2021 WL 4239246, at *5 (quoting *Fried v. LVI Servs., Inc.*, No. 10-CV-9308, 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011)); *see also Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21-CV-2512, 2022 WL 524551, at *13 (S.D.N.Y. Feb. 22, 2022) ("[A]iding and abetting liability [under the NYSHRL] does not attach to a supervisor unless the facts alleged demonstrate that the aider and abettor shared the intent or purpose of the principal actor."). "It follows, that, as a predicate to claiming aiding and abetting discrimination, a plaintiff must have pled discrimination by a principal." *Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 333 (S.D.N.Y. 2024) (citation omitted).

Defendants argue Plaintiff's aiding and abetting claim must fail because "survival of the underlying [NYSHRL] claim[s] is a precondition" to NYSHRL aiding and abetting liability. (Defs.' Mem. 15.) Defendants are correct that an underlying claim for discrimination or retaliation is a "precondition to a valid aiding and abetting claim under the NYSHRL." *Rossbach v. Montefiore Med. Ctr.*, No. 19-CV-5758, 2021 WL 930710, at *7 (S.D.N.Y. Mar. 11,

34

2021); *see also Falchenberg v. N.Y. State Dep't of Educ.*, 338 F. App'x 11, 14 (2d Cir. 2009) (summary order) ("[A]iding and abetting is only a viable theory [of liability] where an underlying violation has taking place . . . . Because we hold that there was no underlying violation of . . . the [NYSHRL], we hold that the district court did not err in dismissing [the plaintiff's] claims for aiding and abetting." (internal citations omitted)). While the Court has evaluated and dismissed Plaintiff's NYSHRL retaliation and hostile work environment claims, *see* supra Sections II.B.3 and II.B.4, it has not evaluated Plaintiff's NYSHRL discrimination claim because Defendants did not challenge it in the instant Motion. (*Compare* SAC ¶¶ 92–99 (outlining Plaintiff's discrimination, hostile work environment, retaliation, and aiding and abetting claims under NSYHRL) *with* Defs.' Mot. 2 (asking the Court to dismiss, inter alia, Plaintiff's "claims for retaliation and hostile work environment under NYSHRL" and his "[NYSHRL] aiding and abetting discrimination claim against [von Sengbusch and Howell]").) Accordingly, the Court declines to dismiss Plaintiff's aiding and abetting claim at this juncture because it could be predicated upon Plaintiff's unchallenged NYSHRL discrimination claim.

### III. Conclusion

For the reasons set forth above, Defendants' Motion is granted as to Plaintiff's Title VII religious discrimination claim, Title VII and NYSHRL retaliation claims, and Title VII and NYSHRL hostile work environment claims and denied as to Plaintiff's NYSHRL aiding and abetting claim. Moreover, Plaintiff's Title VII religious discrimination claim, Title VII and NYSHRL retaliation claims, and Title VII and NYSHRL hostile work environment claims are now dismissed with prejudice, as Plaintiff has twice amended and failed to state any claim against Defendants. *See Justice v. McGovern*, No. 11-CV-5076, 2013 WL 1809634, at *3 (E.D.N.Y. Apr. 29, 2013) ("Although when a motion to dismiss is granted, the usual practice is

35

to grant leave to amend the complaint, when the plaintiff is put on notice of the deficiencies in his complaint and fails to correct them in the amended complaint[,] dismissal with prejudice is proper" (citation, alterations, and quotation marks omitted)); *Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 344 (S.D.N.Y. 2011) ("[A]s plaintiff has already amended his complaint twice, dismissal with prejudice is appropriate at this stage in the litigation." (citation omitted)). The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 66.

SO ORDERED.

Dated:     March 31, 2026
          White Plains, New York

                             KENNETH M. KARAS
                             United States District Judge